Argued and submitted January 6, reversed and remanded September 10, 1986

# THE OREGON BANK,
*Appellant,*

*v.*

# HILDENBRAND et al,
*Defendants,*

# BUCKLEY, JOHNSON, CARLSON and BOLEN, P.C.,
*Respondent.*

(84-0064C; CA A34745)

724 P2d 898

Kathryn L. McFerron, Portland, argued the cause and filed the briefs for appellant.

Alan K. Brickley, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Plaintiff brought this action to reinstate and foreclose a second mortgage on property previously owned by defendants Hildenbrand.[1] Plaintiff alleges that the mortgage secures a promissory note executed by defendants John F. Hildenbrand, Anthony J. Coyle and James Spencer.[2] The trial court granted summary judgment in favor of defendant Buckley, Johnson, Carlson and Bolen, P.C. (Buckley), holding that it had a prior lien on the property. From the ensuing judgment, plaintiff appeals. We reverse and remand.

On November 17, 1981, The Fifth Season, Inc. (Fifth Season) borrowed $50,000 from plaintiff evidenced by a promissory note in that amount. Defendants Hildenbrand, Coyle and James Spencer, principal shareholders of Fifth Season, were guarantors of that debt under a continuing guaranty dated November 4, 1981. The debt was secured by a mortgage that was given by the Hildenbrands on their property and was recorded on November 23, 1981. Plaintiff seeks to foreclose that mortgage.

On March 7, 1983, Buckley, then acting as legal counsel for Fifth Season, obtained a trust deed covering the same real property to secure payment of attorney fees. The trust deed was recorded on April 22, 1983. Buckley claims a prior interest in the Hildenbrand property under the trust deed on the basis of the events discussed below.

On March 16, 1983, plaintiff loaned an additional $7,850 to Fifth Season, which, in turn, executed another promissory note in that amount. That note was secured by the mortgage dated November 17, 1981, under a future advance clause, which provided:

"The security of this mortgage shall also extend to and

---

[1] Lincoln Savings and Loan Association was the holder of the first lien on the property in the amount of $82,703.37, which was acquired pursuant to a trust deed recorded on June 29, 1979. A trustee's sale was conducted on its behalf on July 18, 1984, after the trial court's decision in this case, at which defendant Buckley, Johnson, Carlson and Bolen, P.C., purchased the property for $100,473.37. The argument now is over the proceeds in excess of the amounts owing to Lincoln Savings & Loan Association.

[2] Default judgments were entered against all defendants except Buckley and James Spencer. Spencer was dismissed.

cover any additional loan, loans or advances made by Mortgagee to Mortgagors or Borrower, or any of them, or any of their successors in ownership in the real estate hereby conveyed."

The new debt was also secured by a separate, contemporaneous mortgage against the same property that was recorded on April 18, 1983.

The note on which this action is based was executed on May 6, 1983. Evidencing a debt of $48,939.54, it was intended to shift the primary obligation for payment of the balance of Fifth Seasons' debt, as evidenced by the two earlier promissory notes, from the corporation, which was then in default on the notes and was contemplating dissolution, to the makers of the new note, John Hildenbrand, Anthony Coyle and James Spencer, who were guarantors of the corporate notes. That note was secured by a new mortgage of the same date and, plaintiff alleges, by the mortgage dated November 17, 1981. Three days later, however, plaintiff executed satisfactions of both the mortgage dated November 17, 1981, and the mortgage dated March 16, 1983. Those satisfactions were recorded on June 2, 1983. On December 29, 1983, plaintiff recorded a "vacation of satisfaction and reinstatement" of the November 17, 1981, mortgage.

The trial court ruled that the original corporate debt was paid by the negotiation and execution of the note dated May 6, 1983, and that the satisfactions of mortgage executed by plaintiff on May 9, 1983, were valid. It held, therefore, that plaintiff's security interest in the property was inferior to that of Buckley. On appeal, plaintiff contends that the May 6 note was intended merely as a renewal note and was not intended to extinguish the original debt and that the satisfactions of the earlier mortgages were executed and recorded through inadvertence and mistake.

The parties agree that the case may be decided on the record before us; accordingly, we proceed on that basis. That the note executed on May 6, 1983, was intended, as plaintiff asserts, as a renewal note of the notes executed earlier by Fifth Season is evidenced by a letter that was sent by William Buckley, senior partner of Buckley, to Jesse Averette, vice president of plaintiff, on behalf of Fifth Season. The letter is

dated May 24, 1983, after defendant had acquired the lien for which it claims priority.

"Dear Jesse:

"The purpose of this letter is to confirm the terms of the permanent note which is *to be executed on behalf of The Fifth Season, Inc. by its guarantors,* John F. Hildenbrand, Anthony J. Coyle and James F. Spencer. It is my understanding that the terms agreed to are as follows, provided that interest on the present 90-day note is paid on or before August 1, 1983, then:

"Principal balance of $47,772.16

"Fourteen and one-half per cent interest (14.5%)

"Fifteen (15) year amortization

"First payment due September 1, 1983

"Monthly payments of $652.33

"Three (3) year balloon

"Debt to John and Jeri Hildenbrand, Tony and Patty Coyle and Jim Spencer

"Security: *Second mortgage* on the Hildenbrand home located at 8870 S.W. Pacer Drive, Beaverton, Oregon 97005

"If these terms, as outlined above, conform to your understanding of the agreement, please sign the enclosed copy of this letter where indicated below and return this letter to my office. In the event there is any ambiguity, or if you have any questions, please feel free to contact me.

"Your continuing cooperation and assistance is appreciated." (Emphasis supplied.)

Averette signed and returned the copy of the letter on May 27, 1983. It is clear from that letter that all of the parties to the new note, as well as Buckley, intended that the new note was to be a renewal of the corporate debt, with the former guarantors assuming primary liability, and that the bank's security for the debt, including its priority position, would remain unchanged.

Plaintiff's assertion that the new note was intended as a renewal note is also supported by the fact that the makers of the new note were liable as guarantors of the earlier notes for the indebtedness of Fifth Season, which was, at the time

the new note was issued, in default and contemplating dissolution. The new note simply shifted the primary obligation, as evidenced on the face of the original note, to those who would be liable ultimately for the debt under the circumstances then existing. Therefore, because "the giving of a note does not extinguish the debt for which it was given unless the parties have intended or agreed that this be so," *Doyle v. Chladek,* 240 Or 598, 610, 401 P2d 18, 403 P2d 381 (1965), we conclude that the note dated May 6, 1983, did not extinguish the original debt. *See also Black v. Sippy,* 15 Or 574, 576, 16 P 418 (1888).

Without considering plaintiff's claim of inadvertence and mistake with respect to the satisfactions of mortgage it executed and recorded, we note that ORS 86.120 describes the effect of a discharge of record. It provides:

> "No mortgage upon real property shall be discharged except as provided in ORS 86.110 or by the person appearing upon the records of the county where the mortgage is recorded to be the owner thereof. A discharge of the mortgage by such person shall operate to free the land described in the mortgage from the lien of the mortgage *as against all subsequent purchasers and encumbrances for value and without notice.*" (Emphasis supplied.)

Here, Buckley was fully aware that plaintiff did not intend to extinguish the original debt or to effect a change in the priority of its lien. Furthermore, Buckley did not become an encumbrancer in reliance on the satisfaction of mortgages; it had a lien on the property *before* plaintiff recorded its satisfaction. Accordingly, Buckley was not a subsequent encumbrancer without actual knowledge of plaintiff's continuing interest in the property. It does not claim that it was in any way misled or that its interest in the property was in any way prejudiced by plaintiff's actions. Accordingly, there is no basis in law or equity for holding that discharge from the record of the original mortgage freed the property, as against Buckley's interest, from the lien of plaintiff's mortgage.[3]

Reversed and remanded.

---

[3] Buckley contends that the debt evidenced by the note dated May 6, 1983, encompassed a previously unsecured corporate credit-card debt of $1,326.14. We need not resolve this factual issue, however, because if, as we have decided, plaintiff has priority, its claim, excluding the $1,326.14, exceeds the amount available for payment. *See* n 1, *supra.*