**Donald F. RITTMAN, Appellant,**

v.

**STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC SAFETY, Appellee.**

**No. 82592.**

Court of Appeals of Oklahoma, Division No. 3.

Feb. 8, 1994.

Rehearing Denied March 22, 1994.

Certiorari Denied May 17, 1994.

---

Max Everett Ferrell, Jr., Oklahoma City, for appellant.

Earl L. Reeves, Jr., Michelle R. Day, Oklahoma City, for appellee.

## OPINION

GARRETT, Vice Chief Judge:

A police officer was entering the parking lot of a restaurant when he was approached by some unidentified citizens. They pointed out a truck in the parking lot and an individual in that truck, and asked the officer to make contact with the individual in the truck because they believed him to be intoxicated.

The individual in the truck was Appellant, Donald F. Rittman (Rittman).

The officer observed Rittman drive his truck a few feet out of its parking space, and then drive it back into the parking space. He turned on his emergency light and contacted Rittman. Rittman displayed unsteadiness on his feet, slurred speech, and he had the odor of alcohol about him. A second officer was called to come and observe Rittman. The second officer promptly responded and observed Rittman. Both officers believed him to be intoxicated. Rittman was then arrested.

After he was arrested, Rittman was asked to take a breathalyzer test. He refused. After a hearing, Rittman's driving privileges were revoked for 180 days by the Department of Public Safety (DPS) for refusing to submit to the breathalyzer test as required by the implied consent law. 47 O.S.1991 § 751 et seq. Rittman requested a hearing before DPS and the revocation was upheld. He appealed to the District Court, which sustained the revocation. This appeal followed.

In *Abdoo v. Dept. of Public Safety,* 788 P.2d 1389, 1393 (Okl.App.1990) the court said:

> On appeal from orders of implied consent revocations, the appellate courts may not reverse or disturb the findings below unless the lower court's determinations are found to be erroneous as a matter of law or lacking sufficient evidentiary foundation.

In *Leaper v. State,* 753 P.2d 914 (Okl.Cr. 1988) the Court indicated that:

> [I]t is well established that police have a 'right and a duty to investigate all unusual and suspicious circumstances.' *Atterberry v. State,* 726 P.2d 898, 899 (Okl.Cr.1986). This is the duty which arises out of the central role of police in the prevention and detection of crime. See *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880–1881, 20 L.Ed.2d 889 (1968). When in accordance with this duty, the police stop an automobile on the road, they need not actually observe the violation of any law to have probable cause to stop that automobile . . .

Our initial inquiry must be whether there was a valid investigatory stop. We find that the initial stop was valid. It was based on an "anonymous" tip from the two unidentified citizens. They specifically pointed out Rittman and that he was in control of a truck, to the police officer and informed the police officer that Rittman's behavior was indicative of drunkenness. In *Atterberry v. State*, 724 P.2d 898 (Okl.1986), a defendant was stopped based on information by a woman jogger that Atterberry was behaving suspiciously. After an initial investigatory stop, the officer observed a crime being committed in his presence (Atterberry dropped a narcotic substance). At that point, the officer made a warrantless arrest.

Such is the case here. A citizen informed the officer of Rittman's suspicious behavior. The officer observed Rittman in control of his truck and actually driving the truck. These were specific articulable facts sufficient to authorize the initial investigatory stop. cf. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The officer observed typical drunken behavior and that a misdemeanor had occurred. Calling the second officer to come and observe Rittman constituted nothing more than an abundance of caution prior to making a warrantless arrest. As stated in *White v. Oklahoma Dept. of Public Safety*, 606 P.2d 1131, 1132 (Okl.1980):

> [A police] officer may stop a moving vehicle not only when he directly observes a violation of the law, but also when specific articulable facts indicate to him probable cause to believe that a violation of the law is present. Having stopped the vehicle, if the officer then observes the commission of a misdemeanor, as was the case here, he may effect a lawful arrest.

After the valid arrest was made, Rittman was requested to take a breathalyzer test and refused. Oklahoma law requires, and appellate decisions of this state have consistently held, a valid arrest is necessary to invoke a police officer's right under statute to request submission to chemical tests for blood alcohol. 47 O.S.1991 § 751(A); *White v. Oklahoma Dept. of Public Safety*, supra. At the point the valid arrest was made, Rittman became subject to the provisions of the implied consent law.

We specifically hold, under the facts of this case, that the officer was not required to wait until Rittman put himself and the general public in danger by driving his truck on the public streets and highways, before making an investigation. The officer witnessed Rittman in physical control of and driving his truck. Investigation verified that he was intoxicated, as previously related to him by the informants. The investigative stop was valid. The arrest was valid. It follows that the revocation of driving privileges was authorized.

AFFIRMED.

HUNTER, P.J., and BAILEY, J., concur.