No. 81,374

STATE OF KANSAS, *Appellant*, v. WALTER MATTHEW SLATER, *Appellee*.

(986 P.2d 1038)

Opinion filed July 9, 1999.

*Glenn R. Braun*, special prosecutor, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*Michael S. Holland*, of Holland and Holland, of Russell, argued the cause, and *Michael S. Holland II*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Walter Matthew Slater was charged with driving under the influence of alcohol. The trial court suppressed all evidence obtained by the arresting officer after the stop of the defendant's vehicle and dismissed the charge. The State appeals, claiming that information obtained from an anonymous caller and conveyed to

the arresting officer through a police dispatcher created reasonable suspicion that a crime had been committed and, thus, justified the stop. We agree and, therefore, reverse and remand.

The facts are not in dispute. Police officer Matthew McNemee was on routine patrol in Hays on February 15, 1997. At 12:29 a.m., he received a dispatch from the Hays Police Department dispatcher regarding a possible drunk driver. The dispatcher advised all officers in the local area that a possible drunk driver was leaving Burger King. The dispatcher advised that the vehicle was a black pickup bearing license tag HEK 477. The dispatcher also advised that the tag was registered to Walter Slater at 2212 Downing.

Within minutes, Officer McNemee went to Burger King, did not see the black pickup, and proceeded to the defendant's home address, a short distance from Burger King. Approximately a block prior to reaching the address of the defendant, Officer McNemee observed the black pickup with a license tag of HEK 477. He activated his lights, followed the truck for a block while observing no signs of poor driving, and stopped the vehicle. As the driver got out, a beer can fell out of the pickup and the driver stumbled and staggered. The sole reason Officer McNemee stopped the defendant was to ascertain or check out the information he received from the dispatcher.

The question raised by this appeal is whether the anonymous tip of a "possible drunk driver" at a specific location, together with a specific description of the vehicle, license tag number, and address of the registered owner is alone sufficient to provide an articulable and reasonable suspicion that a crime is being committed. The trial court found that it was not and ordered the results of the ensuing blood alcohol test suppressed.

Analysis

The traffic stop of a vehicle by a law enforcement officer is a seizure under the Fourth Amendment to the United State Constitution. *State v. Hopper*, 260 Kan. 66, 69, 917 P.2d 872 (1996). A law enforcement officer may stop any person in a public place based upon specific and articulable facts raising a reasonable suspicion that such person has committed or is about to commit a

crime. *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). K.S.A 22-2402(1), the Kansas stop and frisk statute, is a codification of the Fourth Amendment search and seizure principles expressed in *Terry.*

The United States Supreme Court and this court have provided the standard for determining whether reasonable suspicion exists by contrasting it with the familiar standard of probable cause which is required for an arrest:

"Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . . Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture' [citation omitted] that must be taken into account when evaluating whether there is reasonable suspicion." *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990).

See *State v. DeMarco.* 263 Kan. 727, Syl. ¶ 4, 952 P.2d 1276 (1998).

We, therefore, must examine both the content of information possessed by the police officer in this case and its degree of reliability in our determination of whether based upon the totality of the circumstances—the whole picture—there existed reasonable suspicion to stop the defendant's vehicle. We concern ourselves with both the quantity and quality of the information possessed by the officer.

Before beginning our examination we note that in 1994 the Kansas Court of Appeals addressed a very similar question to the one we now consider. In *State v. Tucker*, 19 Kan. App. 2d 920, 878 P.2d 855, *rev. denied* 255 Kan. 1007 (1994), the defendant was stopped based on an anonymous tip and eventually convicted of driving while intoxicated. He appealed, claiming that the police stop violated his Fourth Amendment rights.

Prior to the stop of Tucker, a report had been received by the dispatcher from an anonymous caller who was not identified until after the arrest was made. The caller advised that he had observed a white male driving a red 1960's model Ford pickup southbound

on K-61 Highway from Inman. The caller further reported that the driver appeared to be drunk and was running other vehicles off of the roadway. The officer headed north on K-61, observed a red 1960's model Ford pickup, followed the pickup, did not observe any erratic driving, but stopped the vehicle to investigate the anonymous tip. 19 Kan. App. 2d at 922.

In a well-reasoned opinion authored by Judge Robert J. Lewis, Jr., the Court of Appeals concluded that under the totality of circumstances, the stop was justified. In posing the question of whether the stop was based upon specific and articulable facts in the case of an anonymous caller, the court emphasized that the case involved the ever-changing equation used to balance the rights of movement and right to privacy with the right of the public to be protected from unreasonable danger. The court recognized that in the case of the stop and search of "a mobile automobile, the requirements to justify a stop or search or arrest are lessened." 19 Kan. App. 2d at 923. After an extensive discussion of the Kansas and United States Supreme Court cases involving the Fourth Amendment and automobiles, the court concluded:

"It is clear from the decisions reviewed that the Fourth Amendment is applied somewhat differently where the automobile in its mobile state is involved. It is also clear that the balancing test must consider the risk to the public of not making an immediate stop against the right of an individual to be free from such stops. We believe that, where the danger to the public is clear, urgent, and immediate, the equation must be weighted in favor of protecting the public and removing the danger." 19 Kan. App. 2d at 927.

As in *Tucker*, we approach the question of whether the officer acted upon reasonable suspicion with an appreciation of the risk of harm involved. As the Utah Court of Appeals recently stated in the case of *Kaysville City v. Mulcahy*, 943 P.2d 231, 236 (Utah App. 1997):

"Before proceeding further, we think it vital to emphasize that the tip in this case reported a drunk driver who was at that time on the road. We therefore must consider
'the ever-changing equation used to balance the rights of an individual to be free from unwarranted intrusions of his or her freedom of movement and right to privacy with the right of the public to be protected from unreasonable danger. This equation and the balance change with the facts presented.'

[Citation omitted.] As the Kansas Court of Appeals noted in *State v. Tucker*, 'A motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible.' *Id.* at 861. Under those circumstances, '[a]n investigatory . . . stop of a suspected drunken driver is a [comparatively] minimal intrusion upon that driver's freedom of movement and privacy.' *Id.* We agree with the *Tucker* court 'that the greater and more immediate the risk to the public revealed by the tip, the less importance we will accord to the process of corroboration or verification of the tip.' *Id.* at 862. Thus, the following application of the law to the facts of this case is colored by our belief that '[t]he "totality" of circumstances tips the balance in favor of public safety and lessens the . . . requirements of reliability and corroboration.' *Id.* at 864."

Thus, our determination of whether reasonable suspicion existed under the totality of circumstances is affected by the threat a possible drunk driver poses to public safety.

## Quantity and Quality of the Information

"Informant's tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime— the subtleties of the hearsay rule should not thwart an appropriate police response." *Adams v. Williams*, 407 U.S. 143, 147, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972).

In *Alabama v. White*, the United States Supreme Court noted that an anonymous tip alone will seldom demonstrate the informant's basis of knowledge or veracity and, thus, is seldom sufficient, standing alone to provide a reasonable suspicion to make a stop. 496 U.S. at 329. However, where the anonymous tip is sufficiently corroborated, it may provide a basis for reasonable suspicion. 496 U.S. at 330. The Court stated: "Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." 496 U.S. at 330.

Although *Tucker* is the sole case concerning anonymous tips and traffic stops in Kansas, numerous other states have found such

stops to be valid where the totality of the circumstances indicated that the tip was sufficiently reliable. See *Goodlataw v. State*, 847 P.2d 589 (Alaska App. 1993); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *People v. Willard*, 183 Cal. App. 3d Supp. 5, 228 Cal. Rptr. 895 (1986); *Peterson v. Tipton*, 833 P.2d 830 (Colo. App. 1992); *State v. Evans*, 692 So. 2d 216 (Fla. App. 1997); *State v. Butler*, 224 Ga. App. 397, 480 S.E.2d 387 (1997); *State v. Smith*, 638 N.E.2d 1353 (Ind. App. 1994); *State v. Markus*, 478 N.W.2d 405 (Iowa App. 1991); *State v. Sampson*, 669 A.2d 1326 (Me. 1996); *Playle v. Commissioner of Public Safety*, 439 N.W.2d 747 (Minn. App. 1989); *State v. Melanson*, 140 N.H. 199, 665 A.2d 338 (1995); *Taxation and Revenue Dept. v. Van Ruiten*, 107 N.M. 536, 760 P.2d 1302 (1988); *People v. Rance*, 227 App. Div. 2d 936, 644 N.Y.S.2d 447 (1996); *State v. Bryl*, 477 N.W.2d 814 (N.D. 1991); *State v. Ramey*, 129 Ohio App. 3d 409, 717 N.E.2d 1153 (1998); *Rittman v. State ex rel. Dept. of P. S.*, 875 P.2d 439 (Okla. App. 1994); *State v. Lownes*, 499 N.W.2d 896 (S.D. 1993); *State v. Sailo*, 910 S.W.2d 184 (Tex. App. 1995); *Kaysville City v. Mulcahy*, 943 P.2d 231.

A synthesis of these cases shows a definite scale which courts use to determine whether a stop based on an anonymous tip is lawful. In making this determination, courts focus on three factors: (1) the type of tip or informant involved; (2) the detail given about the observed criminal activity; and (3) whether the police officer's personal observations corroborate the information supplied in the tip. See *Kaysville City v. Mulcahy*, 943 P.2d at 235-36.

Regarding the first factor, the most favored of the tips are those which are in fact not really anonymous at all. These tips occur when the person giving the tip gives the police his or her name and address or identifies himself or herself in such a way that he or she can be held accountable for the tip. Courts have consistently held that such a tip may support a traffic stop. See *Frette v. City of Springdale*, 331 Ark. at 115; *State v. Evans*, 692 So. 2d at 219; *State v. Butler*, 224 Ga. App. at 397-98; *Kaysville City v. Mulcahy*, 943 P.2d at 235-36. An identified citizen-informant's tip is high on the reliability scale and "[f]urther weighing in favor of the reliability and veracity of a named citizen-informant is that 'the informant is

exposed to possible criminal and civil prosecution if the report is false.' [Citations omitted.]" *Kaysville City v. Mulcahy*, 943 P.2d at 235.

Second on the scale of reliability are those tips in which, although the informant does not identify himself or herself, the informant gives enough information that his or her identity may be ascertained. This occurs where the informant states that he or she is calling from his or her place of business, or where the informant in person makes contact with the police officer. In such cases courts generally find such a tip to be reliable. See *People v. Willard*, 183 Cal. App. 3d Supp. at 8 (motorist in car beside an officer in moving traffic told the officer that the driver of another car was drunk and pointed to the car); *Peterson v. Tipton*, 833 P.2d at 831-32 (clerk at a gas station reported to a dispatcher that an intoxicated male was getting into a car and the clerk later pointed the car out to the officer); *State v. Sampson*, 669 A.2d at 1328 (although anonymous, a reasonable inference showed that informant was an employee of a doughnut shop); *Playle v. Commissioner of Public Safety*, 439 N.W. 2d at 748 (caller identified himself as an employee of the restaurant); *State v. Ramey*, 129 Ohio App. 3d at 412-13 (passerby flagged down an officer to give information); *Rittman v. State ex rel. Dept. of P. S.*, 875 P.2d at 440-41 (officer was approached by citizens in a parking lot who pointed out a truck and an intoxicated individual in the truck); *State v. Sailo*, 910 S.W. 2d at 188 (citizen drove up to officer and shouted that he had seen a possible drunk driver who was driving all over the road). But see *State v. Tibbet*, 96 Or. App. 116, 118, 771 P.2d 654 (1989) (motorist drove up to an officer and gave a description of the car, stating that the person appeared to be intoxicated; tip was held not reliable); *Campbell v. Department of Licensing*, 31 Wash. App. 833, 835-36, 644 P.2d 1219 (1982) (motorist drove up to a car and yelled to an officer that a drunk driver was heading southbound, and gave a description of the vehicle; tip held not reliable). Neither *Tibbet* nor *Campbell* appears to be entirely consistent with the majority framework for establishing reliability. *Tibbet* also appears somewhat inconsistent with a later Oregon case, *State v. Shumway*, 124 Or. App. 131, 133, 861 P.2d 384 (1993) (officer in a park was ap-

proached by a citizen who reported that a person driving a green truck was drunk, driving erratically, and had angrily confronted other people in the park; tip found reliable).

Less reliable is an anonymous tip that is truly anonymous as in the instant case. Nonetheless, even where the tip is truly anonymous and the veracity of the informant cannot be determined, courts have upheld traffic stops where the information given by the informant is detailed and corroborated by the officer's subsequent observation with regard to the details in the tip. See *Goodlataw v. State*, 847 P.2d at 590-91 (anonymous informant identified a driver by name, stated the driver had just left her house and was driving home, described her car and stated driver had a great deal to drink and was intoxicated); *State v. Smith*, 638 N.E. 2d at 1355-56 (officer informed of the truck's description and license plate number and also that the truck was being driven erratically); *State v. Markus*, 478 N.W. 2d at 408-09 (anonymous informant gave a description of the truck, license number, direction of travel and location, and stated that the truck was "all over the roadway"); *State v. Melanson*, 140 N.H. at 202-03 (anonymous informant provided officer with a description of the car, license plate number, and direction of travel, and stated that the car had run into a field); *Taxation and Revenue Dept. v. Van Ruiten*, 107 N.M. at 538 (anonymous informant reported that a person had left a store intoxicated and described the vehicle and direction of travel); *People v. Rance*, 227 App. Div. 2d at 936 (anonymous informant reported that an intoxicated person was leaving a business and provided a description of the car and license number); *State v. Lownes*, 499 N.W. 2d at 900 (anonymous informant reported the name of a driver, the description of the motorcycle, and direction of travel, and that the driver was intoxicated). The Kansas Court of Appeals' opinion in *Tucker* falls in this category.

The second factor identified as relevant is whether the informant gives enough detail about the observed activity to support a stop. *Kaysville City v. Mulcahy*, 943 P.2d at 236. A tip is more reliable if it is apparent that the informant observed the details personally instead of simply relying on information from a third party. 943

P.2d at 236. See *State v. Melanson*, 140 N.H. at 202; *State v. Sailo*, 910 S.W. 2d at 189.

The final factor is whether the police officer's personal observations confirm the dispatcher's report of the informant's tip. An officer may corroborate the tip by observing illegal activity or by finding the person and vehicle and the location as substantially described by the informant. *Kaysville City v. Mulcahy*, 943 P.2d at 236. See *State v. Markus*, 478 N.W. 2d at 408.

Not unlike the situation in *Tucker*, the information in this case was conveyed by an anonymous telephone caller who related information of a "possible drunk driver." Although this was truly an anonymous tip and, therefore, not high on the scale of reliability, it did contain information from a citizen concerning a possible drunk driver. From the information related to the dispatcher, the caller had obviously observed the vehicle for a long enough time to accurately identify the vehicle and obtain its license tag number. Within minutes, and in an area not far from the location where the anonymous caller observed the vehicle, the officer observed and identified the same vehicle based on the description given and the license tag of the vehicle.

Of great importance to the trial court in this case was the fact that while the anonymous tip indicated a possible drunk driver, it did not give a basis for the conclusion that the driver was possibly drunk. The trial court held:

"Defendant moved to suppress the evidence obtained by virtue of the stop, arguing that the officer did not have sufficient justification to make the traffic stop. His point is well taken. The only basis for the stop was the dispatcher's statement that there was a possible drunk driver, and described the Defendant's pickup. The problem with this is that there was no evidence provided that establishes the basis for the conclusion that Defendant was a 'possible drunk driver'. There was no evidence presented of erratic or impaired driving. There is no way of knowing the basis for the tipster's conclusion. It may have been based upon observations that would have justified the traffic stop. However, given the lack of any evidence of impairment other than the fact that the dispatcher relayed a tip that the driver was a 'possible drunk driver,' the State of Kansas has not met its burden of proof to show the stop was lawful. (Compare the result found with that in *State v. Tucker*, 19 K.A.2d 920 (1994), wherein the anonymous tipster provided a factual basis for concluding that the driver was impaired, *i.e.*, he was running other vehicles off of the road.) Accordingly, the Defendant's motion to suppress

is sustained. Because all evidence obtained after the stop is tainted, the case is dismissed."

Thus, the trial court distinguished this case from *Tucker* because the tip in this case did not provide an objective basis for the conclusion that the driver might be drunk. The State argues that because the court in *Tucker* did not list the statement that the driver was running other vehicles off the roadway as a factor in its decision, the distinction should not exist. However, it is clear that the amount of detail given by the informant is a factor to be considered in judging the totality of the circumstances surrounding the tip. See *Kaysville City v. Mulcahy*, 943 P.2d at 237.

*Olson v. Comm'r of Public Safety*, 371 N.W.2d 552 (Minn. 1985), supports the trial court's ruling in this case. In *Olson*, the Minnesota Supreme Court ruled that in order for police to stop on the basis of an anonymous tip alone "the anonymous caller must provide at least some specific and articulable facts to support the bare allegation of criminal activity." 371 N.W.2d at 556. The informant in *Olson* notified police of a possible drunken driver in a white Datsun, gave the license number, and also gave the location and direction in which the car was traveling. Even so, the court held:

"On this record, there is a complete lack of even the most minimal indicia of reliability for the anonymous tip. If police cannot stop a car on the highway on the basis of mere whim, neither can they stop on the basis, for all they know, of the mere whim of an anonymous caller. . . .

". . . It would have been a simple matter for the dispatcher to have elicited some minimal specific and articulable facts from the anonymous caller to support the caller's bare assertion of a possibly drunk driver on the road." 371 N.W. 2d at 556.

However, other courts have upheld traffic stops based on the conclusory tip that the driver was intoxicated where other facts in the tip were corroborated by observation. See *Taxation and Revenue Dept. v. Van Ruiten*, 107 N.M. at 538 (vehicle and direction of travel described); *People v. Rance*, 227 App. Div. 2d at 936 (description of car, license number, and place last seen given). Further, other courts have questioned the necessity of the tip containing an objective reason for the conclusion that the driver was intoxicated. In *Kaysville City v. Mulcahy*, the court concluded

"[t]hat Olsen reported a 'drunk individual' without explaining why he thought the person was drunk does not by itself nullify reasonable suspicion. [Citation omitted.] After all, 'although conclusory, the informant's statement that the driver was intoxicated was "the kind of shorthand statement of fact that lay witnesses have always been permitted to testify to in court." ' [Citations omitted.]" 943 P.2d at 237.

Similarly, in *People v. Willard,* the court stated:

"[W]e believe the statement that defendant's vehicle was being driven by what the motorist believed was a 'drunk' is, and would be commonly understood to be, a statement of a fact observed by the motorist. The objective signs of intoxication are matters of common knowledge and experience. Implicit in the motorist's statement is that he had observed defendant and believed him to be drunk. We find no other common sense explanation for his statement." 183 Cal. App. 3d Supp. at 9.

We find the above reasoning in *Kaysville City v. Mulcahy* and *People v. Willard* to be sound. While a tip which provides more specific details regarding the objective reasons for the conclusion that the suspect was intoxicated might rank higher on the reliability scale, the mere fact that the tip includes only the conclusory statement that the suspect was drunk would not necessarily foreclose the prospect of the tip's reliability, especially where other information contained in the tip is corroborated. See *Van Ruiten,* 107 N.M. at 538; *Rance,* 227 App. Div. 2d at 936.

While not stating reasons for his or her conclusion that the defendant in this case was drunk, the informant did provide the police with information that the driver was leaving Burger King. The report advised that the driver was in a black pickup with tag HEK 477. This detailed information raises the inference that the informant observed the defendant personally. An informant who has personally observed incriminating behavior has a stronger basis of knowledge than an informant who relates only what he or she has heard third parties say. See *State v. Melanson,* 140 N.H. at 202; *Kaysville City v. Mulcahy,* 943 P.2d at 236; *State v. Sailo,* 910 S.W. 2d at 189. Finally, the information provided was corroborated by the observation of the police officer who discovered the truck matching the description and license number in the area described by the tip.

We hold under the totality of circumstances involved in this case the information given by the anonymous caller and the officer's corroboration of the description and license number of the vehicle before the investigatory stop was sufficiently reliable to provide the officer with a reasonable suspicion of criminal activity. Even though the reliability of information obtained from an anonymous caller is at the lower end of the scale, the information received in this case posed a clear and immediate danger to the public. We believe that in balancing private and public rights in this case, the equation must be weighed in favor of protecting the public and removing the danger. See *State v. Tucker*, 19 Kan. App. 2d at 927; see also *Van Ruiten*, 107 N.M. at 539; and *People v. Rance*, 227 App. Div. 2d at 936 (under similar facts it was held that the risk to the public under the totality of circumstances justified the investigatory stop based on information received from an anonymous call).

In reaching this decision, we note that brief investigatory stops of motor vehicles based upon reasonable suspicion are substantially less intrusive than other forms of seizures under the Fourth Amendment and are perceived as relatively minimal intrusions upon the Fourth Amendment freedoms. See *State v. Ramey*, 129 Ohio App. 3d at 415. This minimal intrusion is balanced against the substantial harm caused by intoxicated drivers. As the Court of Appeals stated in *Tucker*:

"A motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible. An investigatory or safety stop of a suspected drunken driver is a minimal intrusion upon that driver's freedom of movement or privacy." 19 Kan. App. 2d at 927.

We recognize that the danger posed to the public in this case might not be perceived to have been as great in that the defendant was actually in front of his own house when stopped and presumably was simply going home. Nevertheless, there is no guarantee that the defendant was actually doing so or that he would remain at home. Under the totality of the circumstances, reasonable circumstances existed based on the anonymous tip received by the officer to justify a traffic stop in this case. The trial court erred in suppressing the stop and dismissing the case.

Reversed and remanded for further proceedings.

LOCKETT, J., dissenting: The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 15 of the Kansas Constitution Bill of Rights provides protection identical to that provided under the Fourth Amendment to the United States Constitution. *State v. Wonders*, 263 Kan. 582, 591, 952 P.2d 1351 (1998).

A traffic stop of a vehicle by a law enforcement officer is a seizure under the Fourth Amendment to the United States Constitution. Without violating the protection of the Fourth Amendment, a law enforcement officer may stop a vehicle on the public highway based upon *reasonable suspicion grounded in specific and articulable facts and reasonable inferences from those facts* that the driver of the vehicle has committed or is about to commit a crime. *United States v. Hensley*, 469 U.S. 221, 226, 83 L. Ed. 2d 604, 105 S. Ct. 675 (1985).

The majority recognizes that reasonable suspicion to stop a vehicle, like probable cause, is dependent upon the content of information possessed by the officer and the degree of reliability of that information. In this case, because the officer who stopped the defendant's vehicle had not observed facts sufficient to conclude that the driver had commited a crime, the majority notes that the question is whether the anonymous tip of a "possible drunk driver" at a specific location coupled with a detailed description of the vehicle and its license tag number, supplemented by the address of the registered owner of the vehicle obtained by the dispatcher, provided sufficient facts to cause a reasonable suspicion for the officer to stop the vehicle to determine if the driver was intoxicated. In its analysis, the majority acknowledges that the quality and quantity of the specific, articulable facts stated by the tipster must be taken

into account by the courts when evaluating whether reasonable suspicion existed for the officer to stop a vehicle.

Where an officer stops a suspect's vehicle based on information supplied by an anonymous tip, a two-step analysis is required to determine whether the stop was constitutionally valid. First, a court must determine if the officer had sufficient information of a crime being committed to stop the particular vehicle. Second, the court must decide whether the description of the vehicle given by the anonymous caller was sufficient for the officer to stop that vehicle. I agree with the majority's statement of law as to investigatory stops of a vehicle. I disagree with the majority's application of assumed facts in this case to the balancing test and its conclusion that the stop of the defendant's vehicle was not a violation of the Fourth Amendment.

The facts as to why the officer stopped the defendant's pickup are not in dispute. At 12:29 a.m., on February 15, 1997, Officer Matthew McNemee received a dispatch from the Hays police dispatcher. The dispatcher advised all officers of a *possible drunk driver* leaving Burger King in a black pickup registered to Walter Slater at 2212 Downing bearing license tag HEK 477. I concede that the description of defendant's vehicle was sufficient for the officer to stop the particular vehicle.

Within minutes, McNemee arrived at the Burger King. McNemee did not find the black pickup at that location. He then proceeded to the defendant's home address, a short distance from Burger King. Approximately a block from defendant's address, McNemee observed a black pickup bearing license tag HEK 477. McNemee activated his emergency lights and followed the truck for a block. McNemee testified that although he had observed no signs of bad driving, he stopped the defendant's vehicle to *ascertain* whether the driver was intoxicated.

In its analysis of whether the anonymous tip provided probable cause to stop the vehicle, the majority first observes that the reliability of the information or the tip given to the officer ("possible drunk driver") depends upon what can be ascertained about the individual who provided the tip. The majority then notes that the most favored of the tips are those which are, in fact, not anony-

mous. These tips occur when the person giving the information provides the police his or her name and address, or identifies himself or herself in such a way that he or she can be held accountable (evaluated as to reliability) for the tip. Second on the scale of reliability are those tips in which, although the informant does not identify himself or herself, the informant gives sufficient information that his or her identity may be ascertained. This occurs where the informant states that he or she is calling from his or her place of business or where the informant personally contacts the officer. The majority acknowledges that, as in this case, the least reliable information is a truly anonymous tip and the veracity of the informant cannot be assessed. The majority then observes that information received from an anonymous caller whose identity cannot be ascertained, standing alone, will seldom provide a reasonable suspicion for the officer to make a stop.

The majority concludes that where the anonymous tip is based *upon personal observation* by an anonymous caller *that the driver of a vehicle has committed or is about to commit a crime* is *corroborated* in part by the officer before the stop, the information may provide a basis for reasonable suspicion justifying a stop. The majority cites for its conclusion the following cases where the anonymous person stated he or she had personally observed the criminal behavior: *State v. Tucker*, 19 Kan. App. 2d 920, 878 P.2d 855, rev. denied 255 Kan. 1007 (1994); *Goodlataw v. State*, 847 P.2d 589, 590-91 (Alaska App. 1993) (anonymous informant identified a driver by name, stated the driver had just left her house and was driving home, described her car, and stated driver had a great deal to drink and was intoxicated); *State v. Smith*, 638 N.E.2d 1353, 1355-56 (Ind. App. 1994) (officer informed of the truck's description and license plate number and that the truck was being driven erratically); *State v. Markus*, 478 N.W.2d 405, 408-09 (Iowa App. 1991) (anonymous informant gave a description of the truck, license number, direction of travel and location, and stated that the truck was "all over the roadway"); *State v. Melanson*, 140 N.H. 199, 202-03, 665 A.2d 338 (1995) (anonymous informant provides officer with a description of the car, license plate number, and direction of travel, and stated that the car had run into a field);

*Taxation and Revenue Dept. v. Van Ruiten*, 107 N.M. 536, 538, 760 P.2d 1302 (1988) (anonymous informant reported that a person had left a store intoxicated and described the vehicle and direction of travel); *People v. Rance*, 227 App. Div. 2d 936, 644 N.Y.S.2d 447 (1996) (anonymous informant reported that an intoxicated person was leaving a business and provided a description of the car and license number); *State v. Lownes*, 499 N.W.2d 896, 900 (S.D. 1993) (anonymous informant reported the name of a driver, the description of the motorcycle, and direction of travel, and that the driver was intoxicated).

The majority proceeds by observing that in evaluating whether an anonymous tip has provided a sufficient basis for an investigatory stop of a motor vehicle by an officer, the court focuses on three factors: *(1) the type of tip or informant involved, (2) the detail given about the observed criminal activity, and (3) whether the police officer's personal observations corroborate the information supplied in the tip.* Based upon these standards, the majority applies the "well-reasoned opinion authored by Judge Robert L. Lewis" of the Court of Appeals in *Tucker* to make its determination. Therefore, we must review *Tucker*.

In *Tucker*, the defendant's vehicle was stopped by law enforcement officer based on an anonymous tip. The anonymous caller was subsequently identified after Tucker's arrest. The anonymous caller informed the police dispatcher that *he had observed* a white male driving a red 1960's model Ford pickup southbound on K-61 Highway from Inman. As in this case, Tucker did not claim that the description given was insufficient to stop his vehicle. The caller also stated to the dispatcher that *the driver appeared to be drunk and was running other vehicles off the roadway.* Based on this information, the officer headed north on K-61. The officer observed a red 1960's model Ford pickup. The officer followed the pickup. Although the officer did not observe erratic driving, he stopped the vehicle to investigate whether the driver was intoxicated.

The *Tucker* court stated that public safety reasons alone may justify an investigative stop of a motor vehicle if the safety reasons are based upon specific and articulable facts. It noted that in de-

termining whether the stop of a motor vehicle violates a defendant's Fourth Amendment rights, the courts must balance the rights of an individual to privacy and freedom of movement with the right of the public to be protected from unreasonable dangers. 19 Kan. App. 2d at 923.

The *Tucker* court pointed out that in evaluating whether an anonymous tip has provided a sufficient basis for a safety or investigatory stop of a motor vehicle by police, the greater and more immediate the risk to the public revealed by such a tip, the less important is the corroboration and reliability of the tip. It concluded that an anonymous tip of a possibly intoxicated driver driving erratically and running other vehicles off the road provided a sufficient basis for police to stop the vehicle for safety reasons where the tip was also verified as to the description of the vehicle, the description of the driver, and the highway on which the vehicle was traveling. 19 Kan. App. 2d at 923, 931-32.

Here, three facts provide the basis for analyzing the investigative stop of the defendant's vehicle: (1) an anonymous caller who was never identified; (2) the statement of "a possible drunk driver" without details of any observed erratic driving or criminal activity to support the "possible" conclusion of the driver's drunken condition; and (3) lack of observations by the officer of poor driving or any immediate danger to the public before he stopped the defendant's vehicle.

After stating it was relying upon *Tucker*, the majority completely disregards the rationale of *Tucker* in its analysis. It does so by shifting the focus from specific articulable facts relating to the offense—to the quality of the description of the vehicle to be stopped. The majority recognizes that although specific details supporting a conclusion that the suspect was intoxicated would have increased the reliability of the tip, the mere assertion that the driver was "possibly drunk" does not foreclose our determination that the anonymous tip was reliable. It reaches this decision based on the fact that the vehicle the officer stopped corroborated the anonymous tip's description of the vehicle.

In its evaluation of the three factors considered in determining whether the anonymous tip provided a sufficient basis for investi-

gatory stop of the defendant's vehicle, the majority first observes that while the tipster did not state what he or she observed to conclude that the driver was possibly drunk, the tipster did provide the police with information that the driver was leaving Burger King in a black pickup with tag HEK 477. It then concludes that this detailed information (description) of the vehicle to be stopped, its location and direction of travel, *raises the inference* that the informant personally observed the vehicle. Then the majority concludes that *an informant who has personally observed incriminating behavior* has a stronger basis of knowledge than an informant who relates only what he has heard third parties say regarding a possible drunk driver. In making this statement, the majority ignores the fact that the anonymous tip stated no details of observed criminal behavior—the tip merely states the possibility of a drunk driver. At this point the majority has not only inferred that the anonymous informant personally observed something, without a factual basis, it determined that the tipster observed sufficient activity to conclude the driver was possibly drunk.

The majority completes the third step of the evaluation by noting the information provided by the anonymous tip as to the description of the vehicle to be stopped *was corroborated by the observation of the police officer who discovered the truck matching the description and license number in the area described in the tip*. This fact is not relevant to criminal activity observed by the officer; it merely proves that the officer stopped the vehicle described in the tip.

Even after going this far, the majority concedes that the danger posed to the public in this case might not be perceived to have been great in that the defendant was actually in front of his own house when stopped and presumably was going home. Then, to create a clear and immediate danger to the public for justification of the stop, the majority opines that if the officer had not stopped the defendant's vehicle there was no guarantee that the defendant was actually going to stop and remain at home, *i.e.*, there was a possibility the defendant would continue driving and could later be a danger.

After assuming the individual who provided the anonymous tip had (1) personally observed (2) unknown specific and articulable facts that would have provided a reasonable suspicion that the driver of a vehicle "was possibly drunk," and (3) there was a possible danger to the public if the officer had not stopped the vehicle because there was no guarantee that the driver was actually going to stop and remain at home, the majority observes that under the totality of circumstances, the anonymous tip of a "possible drunk driver" and the officer's subsequent corroboration of the description and license number of the vehicle was sufficient to provide a reasonable suspicion of criminal activity. This observation allows the majority to conclude that even though the reliability of information obtained from an anonymous caller is at the lower end of the reliability scale, the anonymous tip of a "possible drunk driver" posed a possible clear and immediate danger to the public, and balancing private and public rights in this case, the equation must be weighed in favor of protecting the public and removing the danger.

I agree with Judge Lewis' observation in *Tucker* that the risk of danger presented to the public by a drunken driver is so great that we cannot afford to impose strict, verifiable conditions on an anonymous tip before an investigatory stop can be made in response to such a tip. To require time-consuming verification of the tip in all aspects might well result in the death of an innocent user of our highways. I do not believe that the Fourth Amendment requires the public to accept such risk, and I decline to impose that risk upon the public. The limited intrusion on time and freedom of travel occasioned by a "safety stop" is minimal. The risk to the public if the tip is accurate is extremely high. The balance requires that a safety stop of the nature involved in this action be approved.

Judge Lewis cautioned that the type of tip provided to the law enforcement officer in *Tucker* may not be sufficient where the risk to the public is not urgent and the time exists to verify all aspects of the tip, including the caller's reliability. Reliance on this decision to justify the use of an anonymous tip under other circumstances would be unwise, and I strongly discourage any attempt to expand this decision beyond the perimeters indicated. I agree with Judge

Lewis. Because the majority has expanded *Tucker* far beyond its perimeters by assumptions and possibilities—I must dissent. It is not the province of the appellate court to make assumptions and posit possibilities.

ALLEGRUCCI and ABBOTT, JJ., join in the foregoing dissent.