No. 86,684

CITY OF PRATT, *Appellee*, v. STUART A. STOVER, *Appellant*.

(32 P.3d 1143)

Opinion filed October 19, 2001.

*Michael S. Holland II*, of Holland and Holland, of Russell, argued the cause and was on the brief for appellant.

*Ernest H. Richardson*, city attorney, argued the cause, and *Janice J. Jorns*, former city attorney, was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Stuart Stover appeals his K.S.A. 2000 Supp. 8-1567(a)(3) driving under the influence (DUI) conviction. The only issue is whether *Florida v. J.L.*, 529 U.S. 266, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000), an anonymous tip case, characterizes the informant's tip here as lacking sufficient indicia of reliability to justify the officer's investigatory stop.

We hold that *J.L.* does not control here. The phone tip relied on to stop Stover was not anonymous. The officer's investigatory stop was justified. Finding no error, we affirm.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer on our own motion).

FACTS

On June 24, 2000, at 10:16 p.m., the City of Pratt Police Department received a call from Susan Barnes. Barnes reported that someone had been repeatedly driving by her house at 401 N. Jack-

son in Pratt, honking a car horn, and yelling profanities. She said the driver would either do a u-turn or go around on Main Street and then drive back by her house. Barnes told the dispatcher that she thought the driver was drunk. She described the car as an older model, large, white, four-door car. She said, except for the center light, the three-light taillight on the passenger side was out.

In response to the telephone tip, Officer McGee was notified of the nature and location of the call. He drove to the 100 block of N. Jackson, parked, and turned off his headlights. A large, white, four-door car approached the 400 block of N. Jackson. The car slowed down at the intersection and turned left toward Main Street. Officer McGee did not observe any honking, yelling, cursing, or erratic driving associated with the car.

After running a check on the car's license tag, Officer McGee turned on his emergency lights and stopped the car. He asked Stover for his driver's license and proof of insurance. Officer McGee smelled a strong odor of alcohol on Stover's breath and administered field sobriety tests.

Stover was found guilty of DUI in municipal court. On appeal to the district court, Stover stipulated to Officer McGee's observations in the investigative report and report on the field sobriety tests. Stover's stipulation included the facts that he was driving the car and had: (1) a strong odor of alcohol, (2) slurred and soft speech, (3) bloodshot eyes, and (4) dirty clothes. He filed a motion to suppress all evidence seized after the stop. He argued that under *J.L.*, 529 U.S. 266, Officer McGee performed an illegal stop based upon an uncorroborated telephone tip. After hearing testimony and considering the evidence, the district court denied Stover's motion and found him guilty of DUI. See K.S.A. 2000 Supp. 8-1567(a)(3).

## DISCUSSION

Stover contends that Barnes' call to the dispatcher lacked sufficient indicia of reliability to justify Officer McGee's investigatory stop under *J.L.*, 529 U.S. 266. He argues that the district court erred in failing to grant his motion to suppress. His contention lacks merit.

The question here is whether Officer McGee, acting upon a tip given by Barnes, an identified caller, could reasonably detain Stover's vehicle without personally observing some indicia of intoxication. Our resolution involves a question of law; thus, we have unlimited review. *State v. Muck*, 262 Kan. 459, 464, 939 P.2d 896 (1997). Barnes' tip accurately described the car, accurately predicted its route and location, and reported that it was behaving in a manner indicative of drunk driving.

Stover states that the issue on appeal is whether *J.L.* overrules *State v. Slater*, 267 Kan. 694, 986 P.2d 1038 (1999). He contends that *J.L.* invalidates our analysis of anonymous tips in *Slater*. Stover focuses on the "unreasonable dangers" balancing test of *Slater*. In *Slater*, we said:

> "In determining whether a stop of a motor vehicle violates the defendant's Fourth Amendment rights, a court must balance the rights of the individual to privacy and freedom of movement with the right of the public to be protected from unreasonable dangers; the greater and more immediate the risk to the public revealed by the tip, the less important is the corroboration and reliability of the tip." 267 Kan. 694, Syl. ¶ 6.

Stover extends his argument by observing that *J.L.* rejected Florida's assertion that there should be a "firearm exception" to the Fourth Amendment to the United States Constitution for anonymous tips involving guns because of the potential danger to the public. 529 U.S. at 272.

A brief review of *J.L.* is appropriate. An anonymous caller reported that a young black male, standing at a particular bus stop wearing a plaid shirt, was carrying a gun. Officers went to the bus stop and saw 3 black males, one of whom, the defendant J.L., was wearing a plaid shirt. The officers neither saw a firearm nor observed any unusual movements. One of the officers frisked J.L. and seized a gun from J.L.'s pocket. J.L., who was then almost 16 years old, was charged under Florida law with carrying a concealed firearm without a license and possessing a firearm while under the age of 18.

Justice Ginsburg, writing for the Court, noted that the officers' suspicion that J.L. was carrying a gun arose solely from a call made from an unknown location by an unknown caller. 529 U.S. at 270.

The Supreme Court recognized that there are situations in which an anonymous tip, suitably corroborated, exhibits " 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.' [Citation omitted.]" 529 U.S. at 270. However, it found that in J.L.'s case, the tip lacked such reliability. 529 U.S. at 273-74.

The *J.L.* Court observed that the anonymous call provided no predictive information; thus, the officers were left without means to test the informant's knowledge or credibility. The "unaccountable informant" neither explained how he knew about the gun nor gave a basis for his belief that he had inside information about J.L. 529 U.S. at 271. Florida contended that the tip was reliable because the description of the suspect proved accurate. However, the opinion pointed out that, while such a tip helps officers correctly identify the accused, it does not show that the informant has knowledge of a concealed criminal activity. 529 U.S. at 272.

Other states have distinguished *J.L.* from situations involving tipsters and alleged drunk drivers. See *State v. Eichholtz*, 752 N.E. 2d 163, 166-67 (Ind. App. 2001) (informant not anonymous; he identified himself in such manner that he could be held legally responsible if officer's investigation revealed false report; in addition, informant continued to follow Eichholtz car while staying on line with 911 operator until officer pulled Eichholtz over); *Jobe v. Commissioner of Public Safety*, 609 N.W.2d 919, 921-22 (Minn. App. 2000) (informant gave his name, the location of his car in relation to the other motorist [Jobe], and a description of Jobe's car; although State was unable to locate informant, tip sufficiently reliable under totality of circumstances). See also *State v. Boyea*, 765 A.2d 862, 867 (Vt. 2000), *cert. denied* 121 S. Ct. 2524 (2001)("[A]n anonymous report of an erratic or drunk driver on the highway presents a qualitatively different level of danger, and concomitantly greater urgency for prompt action."); *State v. Rutzinski*, 241 Wis. 2d 729, 748-49, 623 N.W.2d 516 (2001) (finding that unidentified motorist informant's tip concerning defendant's erratic driving contained an indicia of reliability and that investigative traffic stop justified).

Stover also relies on *U.S. v. Lopez-Valdez*, 102 F. Supp. 2d 728 (W.D. Tex. 2000), to support his contention that *J.L.* applies here. However, his reliance is misplaced. The *Lopez-Valdez* court held that, under *J.L.*, without corroboration of predictive information or the independent observation by agents of suspicious activity, an anonymous caller's information was not sufficiently reliable to justify the intrusion of an immigration stop. 102 F. Supp. 2d at 732. Unlike the phone tip here, *Lopez-Valdez* did not involve an identified caller or a possible drunk driver.

The City correctly notes that here, the tip did not come from an anonymous source. Barnes gave both her name and address to the police dispatcher. She described Stover's car in detail, while observing and describing Stover's driving behavior. On the dispatch tape, she described what was occurring and, as the car came back by her house she said, "Listen to this." As she spoke to the dispatcher, Barnes said the car slowed down in front of her house and the people in the car appeared to look at her. Then, she said they could not see her because she was in the dark. We have found the most favored types of tips are those that are not actually anonymous but occur when a person gives the police a name or identification. *Slater*, 267 Kan. at 700. Barnes may have been exposed to criminal prosecution if the report had proven to be false. See K.S.A. 21-3818 (falsely reporting a crime).

Officer McGee saw the accurately described car driving toward the caller's location. He also saw the car's broken taillight, as described by Barnes. See K.S.A. 8-1706 (tail lamps); K.S.A. 8-1708 (stop lamps).

*J.L.* is distinguishable. The facts here do not involve an anonymous tip; thus, we need not reach Stover's contention that *J.L.* overrules *Slater*.

Affirmed.