NOT DESIGNATED FOR PUBLICATION

No. 118,782

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

MICHEL ROBERTO ALVAREZ-GARCIA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed July 6, 2018. Affirmed.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Amber Cabrera*, assistant public defender, of North Central Regional Public Defender's Office, of Junction City, for appellee.

Before GREEN, P.J., MCANANY and BRUNS, JJ.

PER CURIAM: The State appeals from an order of the district court granting Michel Roberto Alvarez-Garcia's motion to suppress evidence seized in a search of his vehicle.

The State charged Alvarez-Garcia with possession of marijuana with intent to distribute and no drug tax stamp. In his suppression motion, Alvarez-Garcia claimed, among other things, that there was no reasonable suspicion of a traffic offense to justify the stop of his vehicle.

1

The evidence at the suppression hearing established that in mid-afternoon on June 15, 2017, Junction City Police Officer Nicholas Blake was travelling east on I-70. He increased his speed to catch up to a semi-truck travelling in the outside lane and in the same direction. He did not state why he chose to follow this particular vehicle. He had not observed the truck driver commit any traffic infractions. He was just "stopping a lot of tractor trailers that day."

Officer Blake drove at a very high rate in order to catch up to the truck, passing vehicles along the way. Once he caught up, he pulled alongside the cab of the truck and continued alongside the truck for a time in order to see the Department of Transportation information on the side of the truck. He then dropped back, pulled in behind the tractor-trailer in the outside lane, and followed closely behind. As he followed, he saw the trailer touch or cross the fog line "at least five times." When asked to explain how far the trailer went over the line, he stated:

> "It varied. There were, what I would refer to as, a single lane breach when the vehicle would drive over onto a solid white line and then come back. There were other times where the vehicle would drive on and slightly over the [white line] and then maintain that position for several seconds, and then come back into their lane."

A video of the traffic stop was played during the motion to suppress. Officer Blake testified that he did not hear the trailer tires make contact with the rumble strips on the highway. There were no road or weather conditions that would have prevented Alvarez-Garcia from staying off the fog line.

Alvarez-Garcia's native language is Spanish. He testified through an interpreter. He stated that he became nervous when he saw Officer Blake's vehicle come up to him at a high rate of speed because he didn't know what was going on. Alvarez-Garcia was

2

worried that he was going to be involved in an accident with the officer's car. He said that he was driving normally, and he denied crossing onto the shoulder.

Officer Blake initiated a traffic stop due to Alvarez-Garcia's failure to maintain a single lane. He checked Alvarez-Garcia's driver's license, commercial driver's logbook, and bill of lading. After finding everything in order, he checked the seal on the back of the trailer which did not match the bill of lading. Alvarez-Garcia explained that the company or the shipper had put the seal on the trailer. Officer Blake returned all of Alvarez-Garcia's documents and told him that he was free to go, but then asked if he could search the trailer. Alvarez-Garcia agreed. Officer Blake searched the trailer and found several bags of marijuana inside.

After hearing the evidence, reviewing the car video, and hearing the arguments of counsel, the district court ruled that the officer did not have reasonable suspicion to stop Alvarez-Garcia for a traffic infraction because the officer had caused or contributed to cause Alvarez-Garcia crossing onto the fog line. The court also found that the tires touching the fog line was incidental and insufficient to generate reasonable suspicion that the traffic infraction occurred. Accordingly, the court found that the stop was illegal and suppressed the State's evidence. The court explained:

> "Officer Blake was driving down the interstate, and he saw a truck in front of him where—some distance. Maybe it went by him, I don't know.
> "How—when he first saw him, we have about a minute before the microphone, and probably part of the—and the sound came on, so there's prerecording; but, that's what we're looking at. It may not be a minute, but somewhere in that neighborhood. And he— it was a target for a drug interdiction, as was admitted, I think. And there's nothing wrong with that. So Officer Blake was simply waiting for a traffic violation to occur so he could do his—his interdiction. And that's also legal.

"And I—as much as I may—well, I'm not going to say anything about that at all. Doesn't make any difference. It's the law. And I follow the law. That's what I'm required to do and sworn to do. So, he sees the truck, and he puts his—the pedal to the metal, so-to-speak, and—I don't know how fast he was going, but it looked like he was going 90 or something because he was passing cars and everybody else on the interstate like they were—you know, they were going, like—not standing still, but he was going at a good clip.

"And here's Mr. Alvarez driving his truck down the highway. And during that period of time that he's driving the truck, until the officer pulled up beside him and came to a—and slowed down pretty quickly so he could be right beside him, Mr. Alvarez had committed no traffic violation. And so Mr. Alvarez looked over, and said he was scared.

"Well, a person that's driving down the highway like that with a truck, and looks over, and there's a—all of a sudden, boom, there's a police car sort of, more or less, pacing right—facing—pacing right beside him at the same speed, I assume that a driver would think, well, I wonder what's going on. So then Mr. Blake—Officer Blake went behind his truck.

"Now, you know, Mr. Alvarez can see behind his truck too. He knew he was there. And, again, he's pacing him. In other words, going the same speed at a certain distance behind him. That is when Mr. Alvarez committed a traffic violation, a number of them. Five total, I think Officer Blake testified to. Now, it is—it is a traffic violation to drive over—inside, so-to-speak, of the white lines, the fog line. That's the fog line on the right side. That's what I think it's called, and that's what I'll call it.

"Now, I know that. But I believe that the cause—and I'm sure Mr. Alvarez was in that truck sweating bullets over what was going on back there. I am convinced, and will find, that Officer Blake, knowingly or unknowingly—and I'm going to say unknowingly—I'm not—but, one or the other—caused or contributed to the defendant going over that line that many times.

" . . . [W]hen a policeman comes up behind you, you don't know what you do—to do. I mean, you're supposed to pull over to the right. Right? And get out of the policeman's way. I don't know if the red lights were on at that time. I'm not sure whether they were or not. I don't know [if] there's anything in [the] testimony about that. But it's—clearly, it's a police car.

"And so I—I can't—I'm not going to be—I'm not going to be the judge that says, when an officer causes, directly or indirectly, knowingly or unknowingly, a traffic violation, that that is a proper and—that's a legal stop. I'm not going to be the one that does that. I'll let the Court of Appeals worry about that. Because I don't think it was. I don't think it's a legal stop for that reason. And I'll make the further findings that I do believe that the passing over the white lines a number of times was incidental.

"You know, there's not a strict liability on crossing a white line. It depends on all of the circumstances that exist at the time to determine whether or not it's a violation. The Court, today, with these circumstances, does not believe it constituted a traffic violation. I don't need to go any further than that. The evidence is suppressed."

The State's interlocutory appeal followed. The State claims the district court erred in suppressing the evidence obtained as a result of this traffic stop. The State has the burden to prove that Officer Blake's search and seizure was lawful in order to avoid suppression of the evidence. See *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

Here, we apply a bifurcated standard of review to the district court's decision. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016); *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). First, we review the district court's factual findings to see if they are supported by substantial competent evidence. *Patterson*, 304 Kan. at 274. Substantial evidence is legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Talkington*, 301 Kan. at 461. In reviewing the factual findings, we do not reweigh the evidence or assess the credibility of witnesses. Then we review the district court's ultimate legal conclusion de novo. *Patterson*, 304 Kan. at 274. We are also called on to interpret K.S.A. 2017 Supp. 8-1522, which is an issue of law over which we have unlimited review. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Bill of Rights protect individuals from unreasonable searches and seizures. *State v. Marx*, 289 Kan. 657, 661, 215 P.3d 601 (2009).

> "[W]hen a law enforcement officer displays authority and restrains an individual's liberty by stopping a vehicle on a public roadway, constitutional issues arise because a seizure occurs within the meaning of the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights, both of which protect individuals against unreasonable searches and seizures. [Citation omitted.]" *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014).

A traffic stop is a seizure of the vehicle's driver. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). To justify the stop the officer must have reasonable suspicion, supported by specific, articulable facts, that a crime has been, is being, or is about to be committed. K.S.A. 22-2402(1); *Marx*, 289 Kan. at 661. Reasonable suspicion is something less than the probable cause standard required for an arrest. *State v. Slater*, 267 Kan. 694, 697, 986 P.2d 1038 (1999). Seeing a traffic violation provides a police officer with an objectively valid reason to make a stop. *Jones*, 300 Kan. at 637. Here, the State asserts that Officer Blake had the right to initiate a legal traffic stop based on reasonable suspicion that the driver had committed several traffic infractions.

In deciding this case we have considered the testimony of Officer Blake and Alvarez-Garcia. We have also reviewed the recording of the video taken from Officer Blake's dash camera. In reviewing the video, we have considered whether this evidence supports the district court's factual findings, but we have not used it to reassess the credibility of the witnesses or the weight of the evidence. See *State v. Diaz-Ruiz*, 42 Kan. App. 2d 325, 329, 211 P.3d 836 (2009).

Alvarez-Garcia was stopped for failing to maintain a single lane under K.S.A. 2017 Supp. 8-1522, which provides:

"Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply.
"(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

Our Supreme Court has interpreted K.S.A. 8-1522(a) as requiring a driver to keep entirely within a single lane while travelling on a roadway with two or more clearly marked lanes. But a violation of K.S.A. 8-1522(a) "requires more than an incidental and minimal lane breach." *Marx*, 289 Kan. at 674. The words "nearly as practicable" indicate that not all intrusions upon the fog line constitute a violation. *Marx*, 289 Kan. at 674.

Here, the video evidence confirms that the tires on Alvarez-Garcia's trailer touched and briefly rode on the fog line several times. But the district court noted that this occurred after Officer Blake pursued Alvarez-Garcia at a high rate of speed and pulled up next to Alvarez-Garcia's truck. After viewing the information off of the side of the truck, the officer fell back behind Alvarez-Garcia and began following him. It is obvious from the video that Alvarez-Garcia would have been aware of Officer Blake's presence as he dropped back, pulled into the outside lane behind the truck, and continued to follow closely behind. There would have been no place for Officer Blake to leave this limited-access highway. By the time he reached an exit at a rest stop, he had already decided to stop the truck. Had Officer Blake dropped back and discontinued closely following Alvarez-Garcia, such a movement would have been apparent to Alvarez-Garcia using his rear view mirrors. The evidence supports the district court's finding that Officer Blake

7

continuing to closely follow the truck caused or contributed to Alvarez-Garcia's distraction which resulted in the trailer's tires briefly touching or driving on the fog line.

In *United States v. Ochoa*, 4 F. Supp. 2d 1007, 1009 (D. Kan. 1998), the defendant was driving in the right-hand lane with a second vehicle closely behind. Officers began following because it appeared the second vehicle was following too closely. The officers pulled alongside the second vehicle in the left-hand lane of the highway, just behind Ochoa's vehicle, and maintained that position for about 15 seconds. During that time, officers observed Ochoa's vehicle cross the fog line on the right side of the lane. The officers pulled over both vehicles for traffic violations, and they found marijuana in the trunk of Ochoa's vehicle. But the district court suppressed the evidence because the officers' conduct would cause a reasonable person to become distracted and startled and to cross over the fog line. The court concluded:

> "When Ochoa briefly drifted onto the shoulder, another vehicle was following her too closely with a patrol car maintaining a position directly beside it. A reasonable driver might have been distracted by the commotion and looked to see what was going on, briefly drifting partially onto the shoulder. In fact, in view of Trooper Rule's testimony which reflects a clear intent to find some reason to pull over both cars, the court must consider the impact of the officers positioning their vehicle beside the Toyota, which may have startled Ochoa into crossing onto the shoulder or committing some other minor traffic violation. The court finds under the facts of this case that Ochoa's single crossing onto the shoulder was not a violation of Kansas law." 4 F. Supp. 2d at 1012.

Here, as in *Ochoa*, the district court attributed the lane violation to Officer Blake's actions. The fact that Officer Blake observed several fog line violations rather than only one as in *Ochoa* is of no significance because they occurred while Officer Blake was closely following Alvarez-Garcia.

The State relies on *United States v. Alvarado*, 430 F.3d 1305 (10th Cir. 2005), *United States v. Ozbirn*, 189 F.3d 1194 (10th Cir. 1999), and *United States v. Bravo-Ortega*, 621 F. Supp. 2d 1159 (D. Utah 2008), where stops were upheld for crossing the fog line. But the defendants in *Alvarado* and *Ozbirn* did not argue that anything caused them to touch or cross over the fog line. In those cases, the courts recognized that it is a fact-specific inquiry into the particular circumstances present to determine whether the driver could reasonably have been expected to maintain a single lane on the roadway. In *Ozbirn*, the court specifically noted that there were no circumstances present—as in *Ochoa* or in our present case—to support a finding that the officer contributed to the vehicle drifting over the line. *Ozbirn*, 189 F.3d at 1199. And in *Bravo-Ortega*, the district court found no facts in the record supporting the theory that the defendant drifted outside his lane because he panicked. 621 F. Supp. 2d at 1169. Here, unlike in *Bravo-Ortega*, the district court relied on testimony from the defendant that he was nervous and worried about getting into an accident with Officer Blake.

The State also points to the fact that Alvarez-Garcia testified that he was unaware that he had crossed the fog line. The State asserts that this testimony contradicts his argument that the officer caused him to cross the fog line. But Alvarez-Garcia did not have to be aware that he crossed the fog line in order to argue that the officer's actions caused him to do so. In fact, Alvarez-Garcia's testimony that he was unaware of the claimed lane violations supports the district court's conclusion that he was distracted by the patrol car. Alvarez-Garcia's testimony that he was nervous and worried about getting into an accident with the officer further supports the district court's conclusion that the officer's actions caused or contributed to the claimed lane violations.

The district court's findings are supported by substantial competent evidence. The district court's conclusion that the officer did not have reasonable suspicion that a traffic

violation had occurred was not erroneous. The district court did not err in granting the suppression motion.

Affirmed.