No. 74,040

STATE OF KANSAS, *Appellant*, v. JOSEPH L. HOPPER, *Appellee*.
(917 P.2d 872)

Opinion filed May 31, 1996.

*Jerry B. Hathaway*, deputy county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the briefs for appellant.

*John A. Potucek II*, of Potucek Law Offices, of Wellington, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

SIX, J.: This is a reasonable suspicion traffic stop case arising from an early hour New Year's Day arrest. Defendant Joseph L. Hopper was charged with driving left of center, driving with a suspended license, driving under the influence of alcohol, and transporting an open container. Hopper filed a motion to suppress,

alleging that the arresting officer lacked reasonable suspicion to make the traffic stop, based on road and weather conditions at the time. The district court granted the motion. The State appealed under K.S.A. 22-3603. In an unpublished opinion filed December 15, 1995, Royse, J., dissenting, the Court of Appeals affirmed, reasoning that the facts were disputed and that *State v. Garcia*, 250 Kan. 310, 827 P.2d 727 (1992) did not permit an appellate court to reweigh the evidence. We granted the State's petition for review. Our jurisdiction is under K.S.A. 20-3018(b).

We find reasonable suspicion for the stop and reverse the Court of Appeals and the district court.

## FACTS

On January 1, 1995, at approximately 1 a.m., Officer John Shaw was driving behind defendant Hopper. As the two vehicles entered a highway curve north of the city of Wellington, Shaw observed Hopper's vehicle: (1) cross the center line by "about a quarter" of the vehicle width, (2) cross the center line again, (3) weave within his own lane, (4) fluctuate his speed between 40 and 52 or 53 miles per hour, and (5) cross the center line a third time. Shaw stopped Hopper.

Hopper challenged whether Shaw had reasonable suspicion to make the traffic stop. Hopper testified that on the night of his arrest, the road was "kind of messy" and there were "patches of ice" on it. He admitted that he had been drinking that evening. The passenger in his vehicle, who had also been drinking, testified that the roads were slick, with lots of sleet and "black ice."

Officer Shaw testified that on the night of Hopper's arrest, "[i]t was cold and I believe it had rained prior." Shaw did not remember there being "snow or scruffy snow or slush on the highway." Shaw also said that he did not recall any weather-related road hazards. He did not have any problem with the roads.

The district judge discussed the road conditions in his memorandum decision:

"The weather conditions, and the effect of the weather conditions on the highway, are material facts in issue on this motion to suppress. *The court was not on the highways on the night in question, but recalls the conditions on the city streets*

*earlier that night as extremely icy from sleet.* While the court would like to assume that there was a reasonable explanation for Shaw's testimony on the weather conditions, none was offered at the hearing, and the court cannot assume facts not in evidence. As it is, Shaw's testimony leaves the impression that he either did not recall the actual weather conditions, or worse, was deliberately minimizing the weather conditions to the point of dishonesty with the court and counsel. *In either event, Shaw's testimony on the weather conditions is discredited.* Testimony discredited as to·a material fact is necessarily suspect as to other material facts. Therefore, the court will not make a finding of reasonable suspicion based upon the Deputy's version of the events. The defendant's motion to suppress is sustained." (Emphasis added.)

## DISCUSSION

The determination of the proper standard for review is the first step in our discussion. The Court of Appeals cited both *State v. Vandiver*, 257 Kan. 53, Syl. ¶ 6, 891 P.2d 350 (1995) and *State v. Garcia*, 250 Kan. 310. In *Vandiver*, we affirmed the Court of Appeals' reversal of Vandiver's conviction for possession of marijuana. The State and Vandiver agreed on the facts. We determined that under the *Vandiver* facts, there was no substantial competent evidence that exigent circumstances existed to authorize the search of Vandiver. 257 Kan. at 64.

In *Garcia*, the motion to suppress related to evidence obtained from a search of Garcia's vehicle and statements made by Garcia after he was stopped because he failed to signal a lane change. The district court granted a motion to suppress, determining that Garcia's consent to the search was not voluntary and the search was illegal. We reversed the Court of Appeals and affirmed the trial court. We believed "the Court of Appeals majority reweighed the evidence in concluding there was insufficient evidence to support the trial court's finding that the consent was involuntary." 250 Kan. at 318.

The standards of review set forth in *Vandiver* and *Garcia* are not inconsistent. The initial question remains whether the district court's findings are supported by substantial evidence. If so, the appellate court should not reweigh the evidence. However, the ultimate determination of the suppression of evidence is a legal

question requiring independent appellate determination. *Vandiver*, 257 Kan. at 58.

Law Applicable to Vehicle Stops

K.S.A. 22-2402(1) provides:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions."

K.S.A. 22-2402(1), the Kansas stop and frisk statute, is a codification of the Fourth Amendment search and seizure principles expressed in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). See *State v. Vistuba*, 251 Kan. 821, 822-23, 840 P.2d 511 (1992) (vehicle stop upheld after officer observed driver go toward ditch, turn back, go toward ditch again, and jerk vehicle back, leaving and returning to roadway, but never crossing center line). A traffic stop always constitutes a seizure. 251 Kan. at 823.

In *State v. Field*, 252 Kan. 657, 847 P.2d 1280 (1993), Field's vehicle was stopped after the officer observed the vehicle weaving within its lane over several blocks on a city street at approximately 2 a.m. Field was arrested for driving while under the influence of alcohol. The officer making the stop said that given the hour of the day and the weaving, he thought the driver "may be impaired to some degree." 252 Kan. at 658. The district court granted Field's motion to dismiss on the grounds that the officer lacked reasonable suspicion to stop the vehicle. We reversed and remanded, stating: "There is no requirement that the officer actually observe a traffic violation being committed. . . . [T]he repeated weaving of a vehicle within its own lane may constitute sufficient reasonable suspicion for an officer to stop and investigate the driver of the vehicle." 252 Kan. at 664.

K.S.A. 8-1514

K.S.A. 8-1514(a) requires that all vehicles be driven on the right half of the roadway, subject to four exceptions:

"(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

"(2). When an obstruction exists making it necessary to drive to the left of the center of the highway, except that any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;

"(3) Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon; or

"(4) Upon a roadway restricted to one-way traffic."

None of the exceptions include hazardous weather conditions. Violation of 8-1514(a) is a traffic infraction subject to a fine. See K.S.A. 8-2116(a); K.S.A. 1995 Supp. 8-2118(c).

K.S.A. 21-3204 provides:

"A person may be guilty of an offense without having criminal intent if the crime is a misdemeanor or traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."

The State argues that the four K.S.A. 8-1514(a) exceptions indicate legislative intent that no other exceptions should exist. We agree.

An absolute liability offense, unlike most other crimes, does not require any criminal intent. The only proof required to convict an individual of an absolute liability offense is that the individual engaged in the prohibited conduct. See *City of Wichita v. Hull*, 11 Kan. App. 2d 441, 445, 724 P.2d 699 (1986) (driving while under the influence, K.S.A. 1984 Supp. 8-1567); see also *City of Overland Park v. Estell*, 8 Kan. App. 2d 182, 187, 653 P.2d 819 (1982), *rev. denied* 232 Kan. 875 (1983) (leaving the scene of an accident, K.S.A. 8-1602); *State v. Baker*, 1 Kan. App. 2d 568, Syl. ¶ 1, 571 P.2d 65 (1977) (speeding, K.S.A. 1976 Supp. 8-1336[a][3]).

In *State v. Merrifield*, 180 Kan. 267, 303 P.2d 155 (1956), we considered G.S. 1949, 8-262, which made it unlawful for any person to drive with a canceled, suspended, or revoked driver's license, and observed:

"It is clear that the statute makes it unlawful to drive a vehicle on the highways when the license to so drive has been suspended. The legislature made no exceptions, and the question of intent is not involved, and the motive or the circumstances under which the driving took place are immaterial." 180 Kan. at 269.

K.S.A. 8-1514(a) contains no intent element.

Hopper argues that the State improperly attempted to raise the absolute liability issue for the first time on appeal. Generally, an issue not presented to the trial court may not be raised for the first time on appeal. *State v. Boyd*, 257 Kan. 82, Syl. ¶ 3, 891 P.2d 358 (1995). In his closing remarks at the hearing on the motion to suppress, Hopper's attorney argued that although 8-1514(a) does not address the weather phenomenon, it does provide an obstruction exception, and Hopper's driving left of center on an icy curve should be considered "within the spirit of the statute." The county attorney disagreed, responding:

"We can't have defendant operating within the scope of the law on one law, the speeding, and just the spirit on the other—the spirit of the law. The law is the law. If he crossed the center line he crossed the center line. . . . The officer testified that he crossed the center line. That in and of itself I believe is—gives us probable cause to stop, if for no other reason than you don't need a civil or a criminal infraction to justify a vehicle stop. You only—The only thing you need is a safety reason, and—and, Your Honor, that's in *State v. Field*, the case counsel cited in his motion."

Although the State did not mention K.S.A. 21-3204 at the district court level, the absolute liability argument can fairly be implied from the remarks of the county attorney.

Interpretation of K.S.A. 8-1514(a) will include determination of the necessary elements to establish the infraction of driving left of center. The absolute liability issue arises inherently from our responsibility to interpret K.S.A. 8-1514(a). See *Thompson v. Founders Group Int'l, Inc.*, 20 Kan. App. 2d 261, 263, 886 P.2d 904 (1994) ("[T]he issue of whether the forum-selection clause applies to [defendant] arises inherently when this court is asked to construe the agreement.") *Thompson* was a contract construction case, but the principle applies as well in the statutory construction context of this case.

Hopper contends that because there are four statutory exceptions to 8-1514(a), driving left of center cannot be an absolute liability offense. According to Hopper, proof of the offense should require proof that none of the four exceptions apply, which will necessarily involve a factual, not a legal determination. However,

no evidence was presented to support the application of any of the four 8-1514(a) exceptions to Hopper's facts.

Hopper argues that the weather and road conditions present at the time of his stop should be considered as an "obstruction" within the meaning of K.S.A. 8-1514(a)(2). Hopper also contends that the district court

"found the Defendant was operating his vehicle prudently under the conditions of the roadway and the prevailing weather phenomenon; that visual impairment and/or the operation of a vehicle to avoid ice sheets and hazardous road spots are obstacles, obstructions or circumstances that would explain a prudent driver avoiding danger or seeking the center of the roadway."

Although weather and road conditions could conceivably create a K.S.A. 8-1514(a)(2) obstruction, there was no evidence in this case of any "obstruction" making it necessary to drive on the left side of the highway.

We find no basis for judicially adding a "road or weather conditions" exception to the four statutory exceptions for violation of K.S.A. 8-1514(a). Were we to do so, a driver would be justified in driving on the wrong side of the road any time the road conditions are icy or weather has obscured the center line.

### Disputed Versus Undisputed Evidence

Before the hearing on the motion ended, the district judge expressed doubts concerning the arresting officer's testimony:

"Well, the reasonable suspicion standard isn't great. On the other hand, it's certainly necessary that the officer's testimony be accepted as what happened to meet that burden. Officer was extremely vague with regard to what he characterized as weaving within a lane. It's—Also, he says there was no weather problems this night. I was in Sumner County that night. I remember it as extremely icy. Now, I didn't get out on a highway, but it was extremely icy that night. How he can say that as no weather problem is—I'm going to take this under advisement, give it some consideration."

The memorandum decision granting the motion noted: "Shaw's testimony with regard to the defendant's fluctuation in speed and crossing the center line would, under ordinary circumstances, constitute reasonable suspicion based upon specific and articulable facts to justify stopping a driver for DUI investigation."

Evidence at the hearing on the motion to suppress as to the road and weather conditions was disputed. However, evidence that Hopper drove left of center was not.

The memorandum decision stated: "The defendant testified that the center line of the road was not obscured. His passenger testified that the highways had been sanded, and that the center line markings were never clear." The district court found: "The weather conditions, and the effect of the weather conditions on the highway, are material facts in issue on this motion to suppress." The district court's conclusion that the weather and road conditions were material facts, absent any evidence that they created a road obstruction within the meaning of K.S.A. 8-1514(a)(2), is erroneous.

### Was There Substantial Supporting Evidence?

In considering the motion to suppress, the district court had to address the legal question of whether the officer had reasonable suspicion based on articulable facts that anyone in Hopper's vehicle had committed, was committing, or was about to commit a crime, or that there were valid public safety concerns present justifying the stop. Driving left of center was the basis for the stop. Under K.S.A. 8-1514(a), the first question is, was there evidence that Hopper drove left of center? The answer is "yes," based on the officer's testimony and Hopper's failure to deny it. The second question is, was there evidence that any of the four exceptions to 8-1514(a) apply? The answer is "no." Hopper produced evidence of the weather and road conditions. However, neither would qualify as road obstructions within the meaning of 8-1514(a)(2). Without evidence that any of the exceptions apply, Hopper committed a traffic infraction by driving left of center.

There was no substantial evidence to support the district court's findings of no reasonable suspicion.

### Court of Appeals Decision

In affirming the district court, the Court of Appeals apparently felt its hands were tied by the district court's determination that the officer was not a credible witness.

The dissenting judge disagreed that the district court's personal observations of the weather conditions could constitute substantial evidence to support the district court's findings. The dissent was troubled by the assumption that weather conditions were a material fact, concluding: "By focusing on weather conditions, the district court lost sight of the issue it was to decide: whether the officer had a reasonable suspicion sufficient to stop Hopper to investigate further." We agree.

The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed. The case is remanded for trial.