No. 86,042

STATE OF KANSAS, *Appellee*, v. CALVIN E. HULLUM, JR., *Appellant*.

(43 P.3d 806)

Opinion filed April 19, 2002.

*Darla J. Lilley*, of Lawrence, argued the cause and was on the brief for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Calvin Hullum was charged with 42 felony counts and, after a 7-day jury trial, was convicted of first-degree felony murder, aggravated criminal sodomy, two counts of rape, one count of attempted rape, three counts of aggravated kidnapping, two counts of kidnapping, four counts of aggravated robbery, four counts of robbery, seven counts of aggravated burglary, and one count of burglary. The charges arose from a string of crimes committed by Hullum between September 1998 to May 1999. On appeal, he contends (1) that his interviews with the police as well as other witness testimony which he claims are fruit of the poisonous tree should have been suppressed, (2) that his upward departure

sentence was improper, and (3) that his life sentence for felony murder constitutes cruel and unusual punishment.

Hullum does not challenge the sufficiency of the evidence on appeal. Therefore, the factual background of these convictions will not be discussed except insofar as it is relevant to the issues raised.

When Hullum was originally arrested, due to the discovery of his fingerprint at one of the crime scenes, he was advised of his *Miranda* rights and then driven to the home where the print was recovered. The detective stopped in front of the house and asked Hullum if he had ever been inside. Hullum said he had never been there. When asked if he was sure, Hullum said he was absolutely sure he had never been to that house before. The detective then drove Hullum to the Kansas City Police Department.

At the station, Hullum was again advised of his *Miranda* rights, and he signed a form acknowledging that he had been advised of his rights and was waiving them. In part, the form stated: "I am willing to make a statement and answer questions. I do not want a lawyer at this time." Immediately after he waived his rights, the detective asked Hullum again if he had ever been to the house at which they stopped. Hullum became slightly upset and responded, "No, I never been in there, man." The detective then asked him why his fingerprints were in there. The detective testified that Hullum then "visually says you got me, don't you, man."

Five recorded statements were taken after this point on May 20, 1999, and May 21, 1999. In those statements, Hullum admitted to his involvement in several crimes, and during his third recorded interview named his cousin, Charles Thompson, as his accomplice on three of the break-ins. There is nothing in the transcript of the interviews that suggests Hullum was coerced into making the statements, nor were any promises made or threats lodged against him. Hullum was advised of his rights and acknowledged he had been advised of his rights prior to each interview. He also executed an additional waiver of rights form on May 21, 1999, and on at least two occasions expressly stated that he did not desire an attorney to be present during the questioning.

Hullum moved to suppress his recorded statements prior to trial, claiming that they were taken in violation of his *Miranda* rights,

after he had invoked his right to an attorney. He also objected to the testimony of Charles Thompson, whom Hullum claimed would not have testified for the State had Thompson not been informed that Hullum implicated him.

Hullum's motion to suppress was based on a statement from the first recorded interview, which he claimed was not properly transcribed. The Kansas City Police Department transcribed the statement, which began approximately 10 minutes after he signed a waiver of rights form, as follows:

"Q:  Have you been advised that you have the right to remain silent; that any statement you make can be used against you as evidence in court; that you have the right to the presence of an attorney, either retained by you or one appointed for you without cost and that the attorney can be present while you are being questioned?
"A:  Yeah, (inaudible) . . . .
"Q:  Let's start with . . .: Pardon me.
"A:  Can I (inaudible) . . . .
"Q:  Okay, you signed this form right?
"A:  Uh-huh.
"Q:  Okay, the advice of rights form you remember signing that? Is that a yes or a no?
"A:  Yes, sir.
"Q:  And are you drunk now, are you drunk?
"A:  No.
"Q:  Are you high? You been smoking crack?
. . . .
"Q:  You know what we're talking about? You don't have any trouble understanding us, right? Were you involved in the burglary in 5-18-99 to 1722 N. 26th Street?
"A:  Yeah."

From this point, the interview continued with Hullum responding to questions posed by the detective.

In his motion to suppress, Hullum argued that at the points where the State transcribed the responses as inaudible, he was actually requesting an attorney. He proposed the following version of the interview:

"Q:  Have you been advised that you have the right to remain silent; that any statement you make can be used against you as evidence in court; that you have the right to the presence of an attorney, either retained by you or one appointed for you without cost and that the attorney can be present while you are being questioned?

"A: Yeah, but I . . . uh . . . .
"Q: Let's start with . . . .
"A: So can I have that? Can I?
"Q: Pardon me.
"A: Can I have one? You know, I'm doing all of (inaudible).
"Q: Okay, you signed this form, right?"

The remainder of this portion of Hullum's interview is transcribed identical to that in the police transcript.

The second time when Hullum claims he invoked his right to counsel, at the end of the interview, was transcribed by the police department to read:

"Q: Do you have anything else you want to add to your statement?
"A: (inaudible)
"Q: You want to talk to a lawyer? Do you want to talk to a lawyer?
"A: No. No. No, man I want to see what's going on man. I want to talk to you man."

Hullum claimed in his suppression motion that he stated the following:

"Q: Do you have anything else you want to add to your statement?
"A: I believe for now I want to talk to a lawyer, my own lawyer.
"Q: You want to talk to a lawyer? Do you want to talk to a lawyer without (inaudible)?
"A: No, no, no. Man, I want to see what's going on man. I want to talk to you man."

The tape recording of the interview was not included in the record on appeal although it was given to and reviewed by the trial judge who heard the motion to suppress.

In his motion to suppress, Hullum's counsel requested that the court find whose version of the interview was correct. While the court denied the motion to suppress, finding that Hullum had been properly advised of his rights and freely waived them including his right to counsel, the court never articulated on the record a specific finding as to which transcription of the interview was correct. The trial court found Hullum had "not requested counsel at the critical time involved in this particular case." Based on this ruling it is obvious the trial court completely discounted the version of the interview which Hullum's counsel presented.

At trial, the State called 56 witnesses in its case in chief. Hullum did not present any evidence in defense, nor did he testify on his own behalf. The State did not introduce any portion of the recorded interviews of Hullum as evidence for its case. Hullum was convicted of the counts as previously stated and brings the present appeal. Our jurisdiction is pursuant to K.S.A. 22-3601(b)(1) (imposition of maximum sentence of life imprisonment).

Hullum first argues that during his initial interview with the police on two separate occasions he invoked his right to counsel. He contends the trial court erred in failing to grant his motion to suppress the statements and any fruits thereof.

Our standard of review when analyzing a district court's ruling on a motion to suppress evidence was recently set forth in *State v. Toothman*, 267 Kan. 412, 416, 985 P.2d 701 (1999), in this manner:

"An appellate court reviews the factual underpinnings of a district court's decision 'by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review.' 263 Kan. 727, Syl. ¶ 1. See *State v. Hopper*, 260 Kan. 66, 68-69, 917 P.2d 872 (1996)."

Substantial evidence was recently described in *State v. Haskins*, 262 Kan. 728, Syl. ¶ 1, 942 P.2d 16 (1997).

"Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion."

Hullum correctly asserts that in custodial interrogations, a request for counsel must end the questioning. In support he cites *Minnick v. Mississippi*, 498 U.S. 146, 147, 112 L. Ed. 2d 489, 111 S. Ct. 486 (1990), in which the United States Supreme Court began: "To protect the privilege against self-incrimination guaranteed by the Fifth Amendment, we have held that the police must terminate interrogation of an accused in custody if the accused requests the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S. Ct. 1602 (1966)." See, *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981).

In his brief, Hullum states: "[T]he context of the police transcript clearly indicates that Mr. Hullum unequivocally invoked his right to counsel." He has absolutely nothing to substantiate this statement except an argument made by his counsel in his motion to suppress. Nothing from the police transcript reflects that Hullum requested an attorney. Hullum is shown acknowledging that he had been advised of his rights, and, when directly questioned at the end of the interview, he expressly states that he does not want counsel but would prefer to speak to the authorities. He specifically waived counsel in the written advice of rights he initialed and signed before the interview began.

Hullum's argument on appeal is based on the version of the interview as interpreted by his own legal counsel and submitted to the court in the motion to suppress. The prosecutor never agreed that this transcription was correct, nor did the trial court find it to be more accurate than the version of the police department. Rather, after a thorough review of the recorded interview, the trial court found that Hullum did not invoke his right to counsel.

The interviewing detective testified at the preliminary hearing that he did not recall Hullum requesting an attorney at any time. The detective also testified that his question at the end of Hullum's first interview directly eliciting whether he wanted an attorney was precipitated by a comment from Hullum he could not understand, but in which Hullum mentioned the word "lawyer." In follow up, the detective stated that he inquired whether Hullum wanted an attorney, to which Hullum responded he did not. The detective stated that Hullum often mumbled during the interviews.

While Hullum's mumbling does not appear to arise to an ambiguous request for counsel, we recently analyzed such a request and the accompanying duty of the investigating officers in *State v. Bailey*, 256 Kan. 872, 878-79, 889 P.2d 738 (1995). After expressly waiving his rights, later in the custodial interrogation the defendant asked if he should ask for an attorney and whether he needed an attorney. The officers did not attempt to clarify whether the defendant was requesting an attorney, but instead told the defendant that it was his decision. After analyzing the most recent decision of *Davis v. United States*, 512 U.S. 452, 129 L. Ed. 2d 362, 114 S.

Ct. 2350 (1994), we opined: "There is no obligation to stop questioning if the statement concerning counsel is not unambiguous or unequivocal." 256 Kan. at 882. Bailey's request was held to be at best an ambiguous one and not necessitating the cessation of the interview in order to seek clarification.

At the preliminary hearing, the interviewing detective was asked by Hullum's counsel about his statement. The following colloquy took place:

"Q: At the end of his first statement that you heard, didn't you hear him say 'I want to talk to a lawyer?'
"A: No. I asked him if he wanted a lawyer. He said something about a lawyer. I couldn't understand what it was. Lot of times he was mumbling. I specifically asked him on the tape 'Do you want a lawyer?' and he said no.
"Q: You didn't hear him say he wanted a lawyer then?
"A: No. I asked him if he wanted a lawyer and he said no."

The detective in our case did not err in asking Hullum to clarify his mumbled mention of a lawyer, but in fact met and exceeded his duty under present case law. As was stated by the *Davis* Court: "Of course, when a suspect makes an ambiguous or equivocal statement it will often be *good police practice* for the interviewing officers to clarify whether or not he actually wants an attorney. . . . But we decline to adopt a rule *requiring* officers to ask clarifying questions." (Emphasis added.) 512 U.S. at 461.

The test to determine whether a suspect is requesting an attorney is an objective one. See *State v. Morris*, 255 Kan. 964, 975, 880 P.2d 1244 (1994) ("The test to determine if a suspect is asserting *Miranda* rights under *Edwards* is an objective inquiry, requiring some statement that can reasonably be construed to be an expression of a desire for an attorney's assistance.") If a suspect inaudibly mumbles that he desires an attorney, it is not error for an investigating officer to seek a clarification of that request.

Hullum's *Miranda* rights were not violated. There is insufficient support in the record that Hullum at any time during his interrogation made an unambiguous or unequivocal request for counsel. We conclude the trial court properly interpreted the interview tape. It was not made a part of the record on appeal. Our rule is clear that an appellant has the "burden of furnishing a record which

affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, an appellate court presumes that the action of the trial court was proper." *State v. Moncla*, 262 Kan. 58, 68, 936 P.2d 727 (1997). Such is the case here.

There is substantial competent evidence to support the trial court's refusal to suppress Hullum's statements. The record does not support Hullum's self-serving interpretation of his own interview.

Hullum next argues that the witness testimony of Charles Thompson and Nova Glin were the product of the alleged illegal interviews and therefore inadmissable as fruits of the poisonous tree.

This court has held that where the tree is not poisonous, neither can be its fruit. *State v. McCowan*, 226 Kan. 752, 756, 602 P.2d 1363 (1979) (defendant's challenge to evidence as "fruit of the poisonous tree" was found to be without merit where trial court had ruled his *Miranda* rights were not violated). Hullum's argument fails for the reasons we have previously stated. We need not consider the State's arguments that these witnesses would have inevitably been identified in the investigation once Hullum's fingerprint was found and witnesses were interviewed.

Hullum contends the trial court's upward departure, doubling the presumptive sentence for one of his rape convictions, was in violation of *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001). The State correctly concedes that his sentence was in violation of this court's decision in *Gould*. Hullum's rape sentence which was doubled is vacated, and this matter must be remanded for resentencing of that count.

Hullum finally argues that his life sentence for felony murder is cruel and unusual punishment under the Eighth Amendment of the United States Constitution and § 9 of the Kansas Constitution Bill of Rights.

Hullum did not raise this argument below. In fact, both by written motion and during oral argument, Hullum used the length of his felony murder sentence to support his motion for downward departure on the other sentences. As this court has consistently held, "when constitutional grounds are asserted for the first time

on appeal, they are not properly before us for review. *State v. Steadman*, 253 Kan. 297, 306, 855 P.2d 919 (1993)." *State v. Coffman*, 260 Kan. 811, 925 P.2d 419 (1996). We will not consider the issue or retreat from our previous decision of *State v. Goodseal*, 220 Kan. 487, Syl. ¶ 4, 553 P.2d 279 (1976).

All of the convictions are affirmed. We vacate the doubled rape sentence and remand for resentencing of that conviction as required by *Gould*.