NOT DESIGNATED FOR PUBLICATION

No. 117,392

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BREANNA MCLARTY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed March 30, 2018.
Affirmed.

*Adam M. Hall*, of Thompson Warner, P.A., of Lawrence, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., PIERRON and POWELL, JJ.

PER CURIAM: Breanna McLarty appeals the district court's denial of her motion to suppress evidence derived from a traffic stop, arguing the officer lacked reasonable suspicion to believe that she failed to yield to an emergency vehicle when passing his patrol vehicle and that she was speeding. She also argues that any failure on her part to adequately yield to the patrol vehicle was the direct and proximate result of the officer's unreasonable and illegal actions. We disagree and affirm.

1

In the predawn hours of August 9, 2016, Deputy Brad Williams of the Douglas County Sheriff's Department stopped a vehicle on 6th Street near Rockledge Road in Lawrence, Kansas, for failing to maintain its lane. Sixth Street is divided into five lanes—two lanes of westbound traffic, two lanes of eastbound traffic, and one center turn lane shared by both west and eastbound traffic. There is no shoulder on the road. The vehicle came to a stop in the outside, westbound lane, and Williams stopped his patrol vehicle behind it, centered within the lane, with his vehicle's emergency lights on but not the siren. Williams estimated that his marked patrol vehicle took up about 6 feet of the 12-foot lane.

As Williams prepared to contact the driver of the stopped vehicle, another vehicle approached from behind, traveling westbound in the inside lane. Williams opened his door about three feet, just enough for him to exit his patrol vehicle, about three seconds before this approaching vehicle passed his vehicle. Williams testified:

> "As I was exiting my patrol vehicle, another vehicle approached from behind me traveling westbound. The vehicle drifted—it was in the left inside lane, and it drifted over towards my patrol vehicle as I was getting out and came very close to hitting me. And then the driver immediately swerved over back to the left and continued on in her lane of travel westbound on 6th Street."

Williams estimated only 6 to 12 inches separated Williams from the moving vehicle. The moving vehicle swerved "real quick" away from Williams' patrol vehicle and kept traveling down the roadway. Williams testified that as the vehicle passed him "it didn't appear to slow down very much, and it's only a 35 mile[s] an hour speed limit, which is relatively slow, and it didn't appear that it had slowed down at all and didn't appear that it was traveling in a speed under 35 miles an hour." Williams explained:

"The vehicle appeared to not be doing the speed limit and it did not appear to me that even if it was speeding, that it slowed down at all or anything like that. I didn't see any movements that would indicate the vehicle slowed down; and to me, it was quicker than 35 miles an hour."

Williams based this estimation on his training and experience.

As a result, Williams released the first driver he had stopped, returned to his patrol vehicle, and gave chase to the moving vehicle that came close to hitting him. Williams stopped the vehicle nearby and discovered McLarty behind the wheel. Subsequent investigation led the State to charge McLarty with felony driving under the influence, tampering with an ignition interlock device, and failing to yield to an emergency vehicle. Before trial, McLarty moved to suppress the evidence derived from the traffic stop, arguing that Williams lacked reasonable suspicion to pull her over.

At the suppression hearing, Williams testified about his observations during the events surrounding his stop of McLarty. Although 6th Street has a center turn lane shared by both westbound and eastbound traffic and no obstructions or traffic prevented McLarty from utilizing the turn lane to safely pass Williams' patrol vehicle, McLarty did not use that lane. Williams conceded that, in general, individuals who are not turning are not allowed to use the center turn lane. He testified that he saw McLarty's vehicle behind him, but he initially believed he had enough space and time to safely exit his vehicle. A passenger in McLarty's vehicle testified that McLarty "slowed down and merged over" when Williams suddenly opened his door. The district court also viewed footage from Williams' onboard camera.

Ultimately, the district court denied McLarty's motion to suppress. The district court found that Williams had two reasons to stop McLarty: (1) McLarty's excessive speed because Williams' training and experience allowed him to "eyeball" whether a

3

vehicle was speeding, and (2) McLarty's driving behavior because she failed to slow down or exercise due caution as required by K.S.A. 8-1530, a statute requiring motorists to yield to emergency vehicles. In denying this motion, the district judge stated:

> "We all know and without a doubt that any type of stop of a vehicle on a public highway is a seizure of that vehicle, but 4th Amendment rights govern any type of seizure of a vehicle on the highway. And so the issue is whether or not the officer could articulate a reasonable suspicion that a crime was being committed.

> "Now first of all, what we have—we have two things. He eyeballed her and believed she was speeding. He has ten years' experience with the sheriff's department and he has five years' experience as a road deputy. Based upon his training and experience, he believes that he can eyeball whether or not a vehicle is speeding and he made that determination that it was.

> "Secondly, he believed that Ms. McLarty had violated 8-1530. Whether it was that she didn't slow down or that she failed to use due caution, either one of those arguments can be made. And you know, this is a fascinating thing about the world that we live in that we all think, 'Oh gosh, if you have a video, then that just proves everything beyond a reasonable doubt,' and as we can see here today, there can be different interpretations of what can be seen on the video. But obviously, there isn't radar, but it does appear that Ms. McLarty did not slow down. And slowing down is part of due caution.

> "Secondly [*sic*], the argument that, 'Let's see. I can come so close, strike the deputy and kill him, and I better do that rather than move over into a turning lane' just doesn't fly with me. It's the same argument that you are allowed driving down just a one lane road and there is a huge pothole or obstruction in that lane, and you are allowed to cross over the center line to avoid that obstruction, and I think that there is driving common sense here that there is an entire turning lane, as we were watching this for what, a minute, and not one car went by. There is no traffic. It would not have been endangering other traffic or endangering Ms. McLarty for her to have moved into that turning lane and it would have definitely been safer for the deputy.

4

"I am also relying on the case of *State v.* [*Ward*], [No. 93,191, 2006 WL 44386 (Kan. App. 2006) (unpublished opinion)]. It's the same situation of the charge which was I think failing to yield to a stationary authorized emergency vehicle under the due caution portion. It is unpublished, but it seems to be about the most on-point thing out there, which states that 'Kansas courts recognize that an officer's testimony, that he or she observed a driver commit a traffic infraction before initiating a stop, provides an objectively valid reason to effectuate a traffic stop.'

"And I think the video does clearly show that Ms. McLarty, on approaching Deputy Williams' vehicle, which we can see from the video, his lights are on and it's reflecting far in front of him, and she did not use due caution. She was going too fast and she was coming too close to him and he had every right then to stop her for a violation of 8-1530, and your motion to suppress is denied."

A jury eventually convicted McLarty of tampering with an ignition interlock device. The district court sentenced her to 90 days in the county jail but placed her on probation from that sentence for 12 months. The jury found McLarty not guilty of felony driving under the influence, and the district court entered a judgment of acquittal on the charge of failing to yield to an emergency vehicle because there was no evidence presented at trial regarding the visibility of the patrol vehicle's emergency lights in the sunlight, as required by K.S.A. 2017 Supp. 8-1720(a).

McLarty timely appeals.

DID THE DISTRICT COURT PROPERLY DENY THE MOTION TO SUPPRESS?

On appeal, McLarty argues the district court erred when it denied her motion to suppress because Williams lacked reasonable suspicion to stop her vehicle. Specifically, McLarty makes three arguments that Williams lacked reasonable suspicion to stop her: (1) She did not violate K.S.A. 8-1530, the statute requiring drivers to yield to emergency vehicles; (2) the suspicion of any wrongdoing under K.S.A. 8-1530 was the direct and

5

proximate result of Williams' unlawful and unreasonable conduct; and (3) she was not speeding.

Our standard of review of a district court's decision on a motion to suppress is a bifurcated one.

"'The trial court's findings are first reviewed to determine whether they are supported by substantial competent evidence. Appellate courts do not reweigh the evidence, assess the credibility of witnesses, or resolve conflicting evidence. The ultimate legal conclusion . . . is then reviewed de novo.' [Citation omitted.]" *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

"'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.' [Citation omitted.]" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

"The traffic stop of a vehicle by a law enforcement officer is a seizure under the Fourth Amendment to the United State[s] Constitution. *State v. Hopper*, 260 Kan. 66, 69, 917 P.2d 872 (1996). A law enforcement officer may stop any person in a public place based upon specific and articulable facts raising a reasonable suspicion that such person has committed or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). K.S.A. 22-2402(1), the Kansas stop and frisk statute, is a codification of the Fourth Amendment search and seizure principles expressed in *Terry*.

"The United States Supreme Court and this court have provided the standard for determining whether reasonable suspicion exists by contrasting it with the familiar standard of probable cause which is required for an arrest:

"'Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required

6

to show probable cause. . . . Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture" [citation omitted] that must be taken into account when evaluating whether there is reasonable suspicion.' *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990)." *State v. Slater*, 267 Kan. 694, 696-97, 986 P.2d 1038 (1999).

K.S.A. 22-2402(1) reads: "Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime." Accordingly, to properly effectuate the stop, Williams only needed reasonable suspicion that McLarty committed or was about to commit a crime. See 267 Kan. at 696-97.

1.    *Did McLarty violate K.S.A. 8-1530 and, in so doing, give Williams reasonable suspicion to support the traffic stop?*

To the extent resolution of this issue involves the interpretation of a statute, our review is de novo. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

K.S.A. 8-1424 defines "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." K.S.A. 8-1530(b) states:

"(b) The driver of a motor vehicle upon approaching a stationary authorized emergency vehicle, when the authorized emergency vehicle is making use of visual signals meeting the requirements of K.S.A. 8-1720, and amendments thereto, or subsection (d) of K.S.A. 8-1722, and amendments thereto, shall do either of the following:

(1) If the driver of the motor vehicle is traveling on a highway that consists of at least two lanes that carry traffic in the same direction of travel as that of the driver's motor vehicle, the driver shall proceed with due caution and, if possible and with due regard to the road, weather and traffic conditions, shall change lanes into a lane that is not adjacent to that of the stationary authorized emergency vehicle; or

(2) if the driver is not traveling on a highway of a type described in paragraph (1), or if the driver is traveling on a highway of that type but it is not possible to change lanes or if to do so would be unsafe, the driver shall proceed with due caution, reduce the speed of the motor vehicle and maintain a safe speed for the road, weather and traffic conditions."

Under this statute, the road on which Williams initiated the stop of the first vehicle was of the type described in K.S.A. 8-1530(b)(1) because there were two westbound lanes of traffic. Therefore, McLarty was required to proceed with due caution and, if possible, change lanes into a lane that was not adjacent to Williams' emergency vehicle.

Williams testified that McLarty passed his patrol vehicle in the required lane. However, she "drifted over towards [Williams'] patrol vehicle as [he] was getting out and came very close to hitting [him]. And then the driver immediately swerved over back to the left and continued on in her lane of travel." Additionally, she did not slow down in the slightest and Williams testified that, based off of his training and experience, McLarty appeared to be driving above the speed limit.

The district court found that McLarty "was going too fast and she was coming too close to [Williams] and he had every right then to stop her for a violation of 8-1530." In making its holding, the district court relied on *State v. Ward*, No. 93,191, 2006 WL 44386 (Kan. App. 2006) (unpublished opinion). In that case, at approximately 1:30 a.m., an officer stopped a vehicle on the right shoulder on an I-35 entrance ramp. The officer had his emergency lights on and his patrol vehicle protruded into the lane of traffic 2 to 3

8

feet. Moments after the officer retrieved the stopped driver's information and returned to his vehicle, another vehicle came within 3 to 4 inches of hitting the patrol vehicle's driver's side mirror as it passed. The officer stopped the vehicle that nearly hit him for a failure to exercise due caution when passing his patrol vehicle. The panel held that the officer had reasonable suspicion to stop Ward for failing to exercise "'due caution'" as required by K.S.A. 8-1530(b). 2006 WL 44386, at *2.

*Ward* is similar to the case at hand. Here, in the predawn hours, Williams stopped another vehicle using his emergency lights. He positioned himself in the middle of the 12-foot lane, leaving 3 feet on the driver's side. McLarty had an entire 12-foot lane at her disposal to cautiously pass Williams' patrol vehicle. While less clearance than in *Ward*, which the court estimated to be about 16 feet at the driver's disposal to cautiously pass, McLarty could have gotten as close to the turning lane dividing line as possible and slowed down when as she passed Williams' vehicle. Instead, she came within 6 to 12 inches of Williams' door, drifted towards his patrol vehicle, and then immediately swerved back into her lane. Moreover, Williams testified that McLarty appeared to be going over the speed limit. In fact, McLarty is heard on the dash cam video telling Williams during the stop that she was going 38 miles per hour. Even if she were driving the posted speed, the dash cam footage shows no signs that McLarty braked or attempted to slow down in any manner as she passed Williams' patrol vehicle. The dash cam video admitted at the suppression hearing confirms Williams' testimony.

K.S.A. 8-1530(b)(1) required McLarty to pay "due regard to the road, weather and traffic conditions," and, although not explicitly required by the statute, even slightly reducing her speed and getting as far left in her lane of travel as she was able to would have been an exercise in due caution based on the road and traffic conditions present. Under these circumstances, we conclude that the district court's findings are supported by substantial competent evidence and Williams had reasonable suspicion to stop McLarty

for failing to exercise due caution when passing his stationary patrol vehicle, as required by K.S.A. 8-1530(b)(1).

2.     *Was the suspicion of any wrongdoing under K.S.A. 8-1530 the direct and proximate result of Williams' conduct?*

Second, McLarty argues the suspicion of any wrongdoing under K.S.A. 8-1530 was the direct and proximate result of Williams' unlawful and unreasonable conduct. Simply put, she argues that Williams needed to conduct the first traffic stop off the roadway or, in the alternative, behave more reasonably while parked on 6th Street during the initial traffic stop.

However, the State counters that this argument was not raised below and cannot be considered for the first time on appeal. While McLarty admits in her brief in a footnote that she did not raise this argument before the district court, she argues we should consider her argument for the first time on appeal because this issue touches upon McLarty's fundamental right to be free from unconstitutional seizure and because the record is sufficient to permit review. In response, the State argues that the record is insufficient in several aspects that prevent review of this issue; namely, the record lacks information about the nature of the roadway in question, the reason why Williams stopped the first car on the road, or the justification for positioning his patrol vehicle in the center of the lane. We agree.

"[A]ppellate courts do not make their own factual findings. Rather, [our role is to] review those factual findings which have been made by the district court." *State v. Estrada-Vital*, 302 Kan. 549, 555, 356 P.3d 1058 (2015). Here, there are no findings or explanations in the record as to why Williams made the first stop where he did. Because the record on appeal is insufficient to decide this issue on the merits, we decline to do so

even though it involves McLarty's fundamental rights. See *State v. Ortega-Cadelan*, 287 Kan. 157, 160-61, 194 P.3d 1195 (2008).

Even if we had a sufficient evidentiary record to resolve the issue, the statutory provision governing the filing of motions to suppress bars McLarty's claim.

> "(1) *Prior to the trial* a defendant aggrieved by an unlawful search and seizure may move for the return of property and to suppress as evidence anything so obtained.
> "(2) The motion shall be in writing and state facts showing wherein the search and seizure were unlawful. . . .
> "(3) The motion shall be made *before trial*, in the court having jurisdiction to try the case, unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion, but the court in its discretion may entertain the motion at the trial." (Emphasis added.) K.S.A. 22-3216(1)-(3).

Nothing in this statute permits the defendant to present only some of the grounds upon which he or she argues the evidence should be suppressed and then later argue different grounds for the suppression at a later stage of the proceeding. K.S.A. 22-3216 indicates all of the grounds supporting the suppression of evidence must be raised in a motion to suppress prior to trial. Additionally, there is no support in K.S.A. 22-3216 to permit this court to entertain such a motion based on new factual grounds for the first time on appeal, and doing so would defeat the purpose of K.S.A. 22-3216.

Our view is consistent with the decision of another panel of this court in a somewhat analogous situation presented in *State v. Snell*, No. 115,478, 2017 WL 3001276, at *3 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. ___ (February 27, 2018). In that case, the defendant asserted a *Miranda* violation before the district court in support of his motion to suppress. Then, on appeal, the defendant argued that the officer lacked reasonable suspicion to support the stop. Disapproving of the

defendant presenting piecemealed theories about the legality of the search or the detention, that panel explained:

> "A motion to suppress can be filed by the defendant only pursuant to [K.S.A. 22-3215, the statute governing the suppression of a confession or admission]. . . . Nothing in the statute permits a defendant to state in a suppression motion only *some* of the grounds upon which it is claimed that the confession or admission is not admissible as evidence, then state different grounds in a subsequent proceeding in the same case. . . . Nothing in the statute permits us to entertain such a motion after trial for the first time on appeal. To allow a reopening of the question on the basis of a new legal theory to support or contest the admissibility of the evidence would defeat the purpose of this statute. Parties must present all arguments relative to the question of suppression when the issue of the admissibility of evidence is initially raised, either before or at trial as the statute requires." 2017 WL 3001276, at *3.

McLarty's claim that the officer's actions were the direct cause of her failure to comply with K.S.A. 8-1530 is not properly before us.

Finally, because we have already found that the officer's stop of McLarty was justified as he had reasonable suspicion that McLarty had violated K.S.A. 8-1530, McLarty's additional claim that the officer's assessment of her speed was unsound and cannot provide justification for the stop is moot.

Affirmed.