NOT DESIGNATED FOR PUBLICATION

No. 118,093

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARK J. BAILEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed August 10, 2018.
Affirmed.

*Dakota T. Loomis*, of Lawrence, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

PER CURIAM: Mark J. Bailey appeals the district court's denial of his motion to suppress evidence obtained during a traffic stop. Bailey contends Trooper Lance Rushmeyer was without reasonable suspicion to stop his vehicle because he did not commit a traffic violation. Upon our review, we find the district court's factual findings were supported by substantial competent evidence. Additionally, the district court did not err in its legal conclusion that the trooper had reasonable suspicion to believe that Bailey committed a traffic violation. Accordingly, we affirm the district court's ruling denying the motion to suppress evidence.

1

FACTUAL AND PROCEDURAL BACKGROUND

On August 21, 2015, at 1:29 a.m., Trooper Rushmeyer observed a vehicle driven by Bailey traveling southbound on Second Street in Lawrence. The vehicle turned left onto Locust Street going eastbound. According to the trooper, the vehicle was being driven left of the double yellow lines on Locust Street. Based on this traffic violation, the trooper initiated a traffic stop. As a result of the traffic stop, the State charged Bailey with driving under the influence (DUI), a class B nonperson misdemeanor, in violation of K.S.A. 2015 Supp. 8-1567(a)(2); and driving on the wrong side of the roadway, a traffic infraction, in violation of K.S.A. 8-1514.

Prior to trial, Bailey moved to suppress evidence of his intoxication which was obtained during the traffic stop. Bailey alleged the stop was pretextual, and the trooper was without reasonable suspicion to initiate a traffic stop because Bailey did not commit a traffic violation. In response, the State asserted that when Bailey "turned onto Locust Street he was observed crossing over the dividing line into a turn lane and straddling a double yellow line."

At the evidentiary hearing on the motion to suppress, Trooper Rushmeyer testified that he saw Bailey's vehicle "short turn" onto Locust. By "short turn" the trooper explained that Bailey did not enter the intersection and make a left turn. Instead, "he crossed over and cut the corner." Trooper Rushmeyer acknowledged, however, that the short turn may not be visible on the video recording. After the turn, the trooper observed Bailey's vehicle on the wrong side of the street on Locust—left of the double yellow lines. He testified that, at a certain point, Bailey's entire vehicle was on the wrong side of the double yellow lines. When asked, Trooper Rushmeyer testified that he had viewed the video recording of the traffic stop and he believed that it confirmed that Bailey's vehicle was driven "on the other side of the line on the wrong side of the road."

2

On the other hand, Bailey argued that the video evidence conflicted with the trooper's testimony. Bailey claimed the video did not show whether he shorted the turn onto Locust and that the trooper could not have seen whether Bailey turned into the wrong lane from his vantage point. Bailey argued that when the trooper turned onto Locust, Bailey's vehicle was in the correct lane of travel. In support, Bailey noted that a vehicle going westbound on Locust passed him. Bailey stated that if he had been in the wrong lane, the two vehicles would have met head on.

The district court viewed a video recording of the encounter. After considering all the evidence, the district judge found:

"I agree the video doesn't show everything that the trooper testified to today. I didn't ever see the car completely in the other lane and the turn is also difficult to see on the video. But the video does show that Mr. Bailey's car when he's on Locust Street headed east, does cross the center line, not completely in the other lane so as to cause a head-on collision, but it does cross that line and doesn't stay completely within his lane and there is oncoming traffic shown in the [video]. And based on solely the video, and I'm not saying I don't believe Trooper Rushmeyer when he says that's what he saw, but just completely on the video there's reasonable suspicion to stop the car, and so the motion to suppress is denied."

Importantly, the district court also specifically addressed Trooper Rushmeyer, "I did not disbelieve your testimony, but it wasn't necessary for the finding because the video showed enough to support the reasonable suspicion."

A jury found Bailey guilty of DUI but not guilty of driving left of center. He was sentenced to six months' probation. Bailey appeals the denial of his motion to suppress.

ANALYSIS

Appellate courts have a bifurcated standard of review when considering a district court's ruling on a motion to suppress evidence. Appellate courts review the district court's factual findings to determine whether they are supported by substantial competent evidence. The court reviews the ultimate legal conclusion using a de novo standard. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

At the outset, it is necessary to mention a few principles of search and seizure law. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A routine traffic stop is a seizure under the Fourth Amendment. *State v. Jimenez*, 308 Kan. 315, 316, 322, 420 P.3d 464 (2018). An officer conducting the stop must have reasonable suspicion that a person is committing, has committed, or is about to commit a crime. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). "A traffic violation provides an objectively valid reason for conducting a traffic stop." *State v. Coleman*, 292 Kan. 813, 818, 257 P.3d 320 (2011).

In addition to these constitutional principles of search and seizure, two Kansas motor vehicle statutes are applicable to the question on appeal. K.S.A. 8-1514(a) provides:

> "(a) Upon all roadways of sufficient width, *a vehicle shall be driven upon the right half of the roadway*, except as follows:
> (1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
> (2) When an obstruction exists making it necessary to drive to the left of the center of the highway, except that any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;

(3) *Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon*; or

(4) Upon a roadway restricted to one-way traffic." (Emphases added.)

Failure to drive on the right half of the roadway is an absolute liability offense unless one of the statutory exceptions applies. *State v. Hopper*, 260 Kan. 66, 70-72, 917 P.2d 872 (1996).

The "rules applicable" to three-lane roadways mentioned in K.S.A. 8-1514(a)(3) are found in K.S.A. 2017 Supp. 8-1522(b). That statute provides:

"(b) Upon a roadway which is divided into three lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction when such center lane is clear of traffic within a safe distance, or in preparation for making a left turn or where such center lane is at the time allocated exclusively to traffic moving in the same direction that the vehicle is proceeding and such allocation is designated by official traffic-control devices."

According to the district court, the video recording showed that, although Bailey's vehicle was not entirely in the wrong lane of travel, it crossed the center line and did not stay completely within its lane. The district court based its findings solely on the video recording without consideration of the trooper's testimony. It is unclear at what point on the roadway the district court determined that Bailey violated K.S.A. 8-1514(a).

We may review the video recording of a traffic stop to determine whether the recording supports the district court's factual findings, but we do not review the recording to determine witness credibility or weighing the evidence. *State v. Garcia*, 297 Kan. 182, 187, 301 P.3d 658 (2013).

5

Bailey contends the video recording does not support the district court's factual findings. He argues that because Locust is initially a three-lane roadway, the exception stated in K.S.A. 8-1514(a)(3) applied—"a vehicle shall be driven upon the right half of the roadway, except . . . [u]pon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon." Bailey also argues that it was impossible to determine from the video recording whether he was traveling outside of his own lane when the road narrowed into two lanes.

The State responds that the video recording shows Bailey's taillights centered in the middle turn lane and that he maintained that position when the road narrowed. The State asserts that Bailey violated "the rules applicable" to three-lane roads, specifically K.S.A. 2017 Supp. 8-1522(b), because he was not passing another vehicle or turning left and his driving in the turn lane was not permitted by a traffic-control device. The State acknowledges that it is difficult to see the center line when the road narrowed to two lanes, but that it appears Bailey, at that point, also straddled the center line.

We have independently reviewed the video recording. It shows that Locust Street is initially separated into three lanes. There is an eastbound lane and a westbound lane, separated by a turn lane. Initially, there are unbroken double yellow lines on the eastbound side of the turn lane. But soon after the intersection, the turn lane becomes available to both the eastbound and westbound lanes, marked by a broken yellow line.

By the time Trooper Rushmeyer turned onto Locust Street, it appears that Bailey was driving wholly in the turn lane, rather than in the right (eastbound) lane. And instead of turning, Bailey proceeded straight through the next intersection, passing a vehicle heading westbound. At that point, the road narrows and there are two lanes separated by an unbroken double yellow line. Although the trooper was some distance behind Bailey, the video recording appears to show Bailey crossing this double yellow line shortly

6

before the trooper is heard saying, "The guy's on the wrong side of the road." Trooper Rushmeyer then activated his emergency lights to initiate the traffic stop.

The video recording shows that Bailey was traveling in the center turn lane on Locust Street. Travel in that lane was permitted by K.S.A. 8-1514(a)(3) because the roadway was divided into three lanes, but only in compliance with "the rules applicable thereon." K.S.A. 8-1514(a)(3). Bailey did not comply with the rules applicable to three-lane roadways, however, because he was not passing another vehicle, turning left, or proceeding in compliance with an official traffic-control device on a lane allocated exclusively to traffic moving in the same direction. K.S.A. 2017 Supp. 8-1522(b). This is a violation of K.S.A. 8-1514(a).

Additionally, there is evidence from the video recording that Bailey crossed the double yellow line on the two lane roadway immediately before the trooper's spontaneous comment and the initiation of the traffic stop. This also constitutes a violation of K.S.A. 8-1514(a).

In his brief, Bailey states, without citation to legal authority: "Given that the district court relied solely upon the videotape to determine if reasonable suspicion existed, this court is limited in its review to the factual findings a reasonable person could support after viewing Trooper Rushmeyer's in-car video." We disagree.

Our standard of review permits us to review the district court's factual findings to determine whether they are supported by substantial competent evidence. *Patterson*, 304 Kan. at 274. Here, relying on the video recording, the district court found that a traffic violation occurred when Bailey drove on the wrong side of the roadway in violation of K.S.A. 8-1514(a). Contrary to Bailey's argument, we are not constrained to only consider the evidence relied on by the district court. In conducting our review to determine if there was substantial competent evidence that a traffic violation occurred, we have also

7

considered the testimony of Trooper Rushmeyer who stated under oath that he personally observed the traffic violation. Importantly, the district court did not discredit the trooper's testimony. On the contrary, the district judge assured Trooper Rushmeyer, "I did not disbelieve your testimony, but it wasn't necessary." In our view, whether or not it was necessary, we have considered Trooper Rushmeyer's testimony in order to fully evaluate all of the substantial competent evidence presented at the suppression hearing.

We hold there was substantial competent evidence to support the district court's conclusion that Trooper Rushmeyer had reasonable suspicion that Bailey violated K.S.A. 8-1514(a). Given the trooper's reasonable suspicion that Bailey committed the traffic violation, the resulting stop of Bailey's vehicle was proper, and the district court did not err in denying Bailey's motion to suppress evidence.

Affirmed.